IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **JOHN FASTRICH and UNIVERSAL INVESTMENT SERVICES, INC.,** <br><br> **Plaintiffs,** <br><br> vs. <br><br> **GREAT AMERICAN FINANCIAL RESOURCE, INC.,** <br><br> **Defendant** | CASE NO. _____ <br><br><br> **CLASS ACTION COMPLAINT AND JURY DEMAND** |

**COME NOW** Plaintiffs, on behalf of themselves and all other similarly situated, by and through their undersigned counsel, and in support of their Class Action Complaint and Jury Demand state to the Court the following:

## SUMMARY OF ALLEGATIONS

1. Continental General Insurance Company ("CGI") is an insurance company headquartered in Austin, Texas that is licensed to sell insurance products in 48 states and the District of Columbia.

2. CGI became part of Defendant Great American Financial Resources, Inc. ("GAFRI") in 2006. HC2 Holdings, Inc. acquired CGI from GAFRI in 2015.

3. Plaintiffs are current and former regional managers, general agents, associate general agents, and/or agents of CGI.

4. Plaintiffs were responsible for, among other things, selling insurance products offered by CGI.

5. Pursuant to contractual agreements with CGI, licensed agents are entitled to compensation known in the industry as "commissions", "renewals" and/or "overrides" on insurance products sold by licensed agents in their hierarchy.

6. A hierarchy consists of four levels of contracting—regional manager, general agent, associate general agent, and agent.

7. As defined in the contracts, overrides are the difference between the compensation paid to individuals in the hierarchy. Regional managers and/or general agents are entitled to renewals or overrides from the agents in their hierarchy.

8. A licensed agent is entitled to commissions on insurance products that he or she sells and becomes agent of record. Whenever an insurance product is sold, the agent who took the original information is considered the agent of record.

9. The agent of record is entitled to commissions and/or renewals on in-force policies and/or replacement policies. In the case of CGI, if an agent of record receives less than $600 of renewals and/or overrides in a 12-month period, the company can terminate his or her commissions, renewals, or overrides on all in-force policies. This circumstance is known in the industry as non-vesting.

10. In the case of non-vesting, the commissions, renewals, and/or overrides then revert to the next agent up in the hierarchy.

11. If an agent of record receives more than $600 of renewals and/or overrides in a 12-month period, the commissions and/or renewals are paid to the agent. This is known as vesting.

12. Pursuant to the CGI contracts, an agent of record is entitled to commissions, overrides, and/or renewals even if his or her contract to represent the company is terminated.

13. In the case where commissions, renewals, and/or overrides revert to the next agent up in the hierarchy, that agent then becomes the agent of record. The agent of record changes each time commissions and renewals revert up the hierarchy due to non-vesting.

## JURISDICTION AND VENUE

14. This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005). With respect to CAFA: (a) the amount in controversy exceeds the jurisdictional amount of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2); (b) the Class consists of thousands of injured persons, and (c) some members of the Class, including Plaintiffs, are citizens of States other than those of Defendants.

15. Venue in this judicial District is proper under 28 U.S.C. § 1391(b)(1) and (2). A substantial part of the events or omissions giving rise to the claims occurred within this District, and GAFRI's principal place of business is in this District.

## PARTIES

16. Plaintiff John Fastrich is a licensed insurance agent and a Carmel, Indiana resident, with his principal place of business in Carmel, Indiana.

17. Plaintiff Universal Investment Services, Inc. ("UIS") is an Indiana insurance agency with its principal place of business in Carmel, Indiana. Plaintiff John Fastrich is the principal of Plaintiff Universal Investment Services, Inc.

18. Both Plaintiffs sold insurance products at issue in this case offered by CGI.

19. GAFRI is a Delaware corporation with its principal place of business in Cincinnati, Ohio.

**FACTS**

20. Plaintiffs sold policies for CGI, including but not limited to Medicare supplements, long-term care, senior life, and annuities.

21. On information and belief, CGI and/or GAFRI filed requests for approval for various new products with the appropriate state insurance commissions.

22. After obtaining state approval of these new products, CGI and GAFRI began contacting existing policyholders and replacing the in-force policies with the new products. GAFRI instructed policyholders to switch policies when receiving rate increase letters on existing CGI products.

23. GAFRI replaced existing policies with new policies and replaced existing agents of record with new agents of record.

24. The original terminated agents of record were not allowed to market the new CGI products. Instead, GAFRI licensed new agents, some of whom were in-house, to market the replacement products.

25. Plaintiffs have lost commissions, renewals, and overrides on the replacement policies and will continue to lose commissions, renewals, and overrides on said policies in the future.

26. The new policies that replaced the original CGI Medicare supplement policies had a reduced commission cycle with renewals paid for a total of six years rather than a lifetime renewal commission cycle.

27. As a result of replacing the existing policies and then terminating commissions, renewals, and overrides of the existing agents of record, a number of agents of record became non-vested.

28.     GAFRI did not revert the commissions, renewals, or overrides to the agent next in the CGI hierarchy.  Instead, GAFRI retained the commissions of the non-vested agents.

29.     Regardless whether a policy was replaced by a new policy by in-house marketing organizations and/or selected outside agents, Plaintiffs remain the agents of record for the purpose of receiving commissions, renewals, and/or overrides.

30.     The contracts between Plaintiffs and CGI did not provide that CGI and/or GAFRI's in-house marketing organization were to receive commissions, renewals or overrides on replacement policies.

31.     The contracts between Plaintiffs and CGI also did not provide that CGI and/or GAFRI were permitted to retain commissions, renewals, and/or overrides when licensed agents became non-vested.

32.     The contracts between Plaintiffs and CGI provided that the agents of record were to receive commissions on premium increases on long term care policies written before January 2000.

33.     CGI and GAFRI breached their contractual agreements with Plaintiffs by failing to pay Plaintiffs commissions, renewals, and overrides on replacement policies.

34.     CGI and GAFRI breached their contractual agreements with Plaintiffs by failing to pay commissions, renewals, and/or overrides to the next agent up in the hierarchy when agents became non-vested.

35.     CGI and GAFRI breached their contractual agreements with Plaintiffs by not paying commissions, renewals, and/or overrides on the premium increases on long term care policies written before January 2000.

36. CGI and GAFRI failed to allow Plaintiffs to market CGI and GAFRI's new products, and failed to allow Plaintiffs to convert existing policyholders to the new policies.

37. CGI and GAFRI have acted in bad faith and engaged in unfair marketing practices by, among other things, canceling existing policies, replacing the policies with new policies, attempting to cancel the Plaintiffs as agent of record, allowing their in-house marketing organization and/or selected outside agents to market the replacement policies, and not allowing Plaintiffs to market the new products.

38. In addition to past commissions, renewals, and/or overrides due Plaintiffs, Plaintiffs are entitled to future commissions, renewals, and/or overrides on replacement policies that remain in force.

39. GAFRI's actions were intentional, willful, and wanton..

## **PARALLEL LITIGATION**

40. Plaintiffs are presently involved in litigation in the U.S. District Court for the District of Nebraska (Case No. 8:16-CV-00487-LSC-FG3) against CGI. A copy of Plaintiffs' complaint is attached as Exhibit 1. Plaintiffs originally made claims against GAFRI as well, but the Court dismissed those claims for lack of personal jurisdiction. The Court denied CGI's motion to dismiss Plaintiffs' breach of contract and unjust enrichment claims, which remain pending.

41. HC2 Holdings, Inc., CGI, and GAFRI are presently involved in litigation in Delaware state court in which HC2 Holdings, Inc. and CGI seek indemnification from GAFRI for Plaintiffs' claims under the parties' Amended and Restated Stock Purchase Agreement dated December 24, 2015. A copy of HC2 Holdings, Inc. and CGI's complaint is attached as Exhibit 2.

## CLASS ACTION ALLEGATIONS

42. Pursuant to Fed. R. Civ P. 23, Plaintiffs bring this action on behalf of themselves and the putative class members as defined below:

> All current and former regional managers, general agents, associate general agents, and/or agents of CGI who have lost commissions, renewals, and/or overrides as a result of CGI and GAFRI's wrongful conduct alleged herein.

43. Excluded from the proposed class are: (a) Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and (b) Defendants' legal representatives, predecessors, successors and assigns.

44. The requirements for maintaining this action as a class action are satisfied as follows.

45. Fed. R. Civ. P. 23(a)(1): Numerosity. The proposed class is so numerous and so geographically dispersed that the individual joinder of all absent class members is impracticable. While the exact number of absent class members is unknown to Plaintiffs at this time, it is ascertainable by appropriate discovery and Plaintiffs are informed and believe, based on the nature of trade and commerce involved, that the proposed class may include hundreds of members, thus satisfying the requirements of Rule 23(a)(1).

46. Fed. R. Civ. P. 23(a)(2): Common Questions of Law or Fact Predominate. Common questions of law or fact exist as to all class members and predominate over any questions which affect only individual class members. These common questions of law or fact include, but are not limited to:

   a. Whether GAFRI breached any contractual obligations to Plaintiffs;

   b. Whether GAFRI was unjustly enriched by Plaintiffs' actions;

    c. Whether Plaintiffs and the class members have suffered damages as a result of GAFRI's conduct;

    d. Whether Plaintiffs and the class members are entitled to damages; and

    e. The measure of damages.

47. Fed. R. Civ. P. 23(a)(3) and (4): Typicality and Adequacy. Plaintiffs' claims are typical of the class members' claims, and Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel with substantial experience in class actions and in complex litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the class members, and have the financial resources to do so. Neither Plaintiffs nor their counsel has any interests adverse to the class members' interests.

48. Fed. R. Civ. P. 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Plaintiffs' damages are relatively small compared to the burden and expense that would be required to individually litigate their claims, so it would be impracticable for the class members to seek redress on an individual basis. Individualized litigation would also pose the threat of significant administrative burden to the court system. Individual cases would create the potential for inconsistent or contradictory judgments, and would increase delay and expense to all parties and the court system. By contrast the class action device presents far fewer management difficulties and provides the streamlined benefits of singular adjudication and comprehensive supervision by one court. Given the similar nature of the class members' claims, the class will be easily managed by the Court and the parties and will be managed more efficiently in this integrated class action than through multiple separate actions in the various states.

## COUNT I – BREACH OF CONTRACT

49. Plaintiffs incorporate the above paragraphs by reference.

50. GAFRI breached the agreements described above by, among other things: (a) canceling CGI's existing policies; (b) replacing the existing policies with new policies and replacing Plaintiffs as agents of record; (c) allowing its in-house marketing organization and/or selected outside agents to market the replacement policies while at the same time not allowing Plaintiffs to market the new products; and (d) failing to pay past and present commissions, renewals, and overrides due Plaintiffs.

51. As a result of GAFRI's breach of contract, Plaintiffs and the class members have been damaged in an amount to be determined at trial.

## COUNT II – UNJUST ENRICHMENT

52. Plaintiffs incorporate the above paragraphs by reference.

53. If GAFRI were permitted to terminate their relationships with Plaintiffs, it would receive the benefit of all of Plaintiffs' labor, efforts, investments, trade secrets, reputation, name, image, market, goodwill, research, commissions, renewals, and overrides.

54. By terminating its relationships with Plaintiffs, GAFRI has and will in the future keep and retain the economic benefit of Plaintiffs' long-time businesses and relationships with policyholders.

55. Plaintiffs have not been compensated for such items and their benefits by GAFRI. The retention by GAFRI of all such items and benefits would be at Plaintiffs' and the class members' expense and would constitute unjust enrichment in an amount to be determined at trial.

## COUNT III – VIOLATION OF NEBRASKA WAGE PAYMENT AND COLLECTION ACT, NEB. REV. STAT. § 48-1228 *ET SEQ*.

56. Plaintiffs incorporate the above paragraphs by reference.

57. The contracts between Plaintiffs and CGI and GAFRI are governed by Nebraska law.

58. Plaintiffs are "employees" and CGI and GAFRI are "employers" pursuant to Neb. Rev. Stat. § 48-1229(1) and (2).

59. The commissions, renewals, and/or overrides CGI and GAFRI failed to pay Plaintiffs are "wages" pursuant to Neb. Rev. Stat. § 48-1229(6).

60. CGI and GAFRI willfully failed to pay Plaintiffs the commissions, renewals, and/or overrides, entitling Plaintiffs to statutory damages including all unpaid wages plus attorney fees, costs, and double damages pursuant to Neb. Rev. Stat. § 48-1231 and § 48-1232.

## DISCOVERY RULE

61. Plaintiffs were not aware, and could not have been aware, of GAFRI's misconduct until October 10, 2013, the date on which Randy Dodds, Paul Mogan, and Robert Zimmy filed claims in Nebraska state court alleging CGI and GAFRI engaged in the wrongful acts alleged herein.

## JURY DEMAND

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment:

1.	Awarding money damages, including prejudgment interest, on each claim in an amount to be established at trial;

2.	Awarding attorneys' fees and costs, statutory damages pursuant to the Nebraska Wage Payment and Collection Act, and other relief;

3.	Granting such other relief as to this Court may seem just and proper.

Dated:  September 14, 2017

        PEIFFER, ROSCA, WOLF,
        ABDULLAH, CARR & KANE
        A PROFESSIONAL LAW CORPORATION
        */s/ Alan Rosca*
        By: Alan Rosca
        1422 Euclid Avenue, Suite 1610
        Cleveland, Ohio 44115
        Telephone:  (216) 570-0097
        Facsimile:  (888) 411-0038
        E-Mail:  arosca@prwlegal.com

        SHINDLER, ANDERSON, GOPLERUD &
        WEESE, P.C.
        J. Barton Goplerud
        Brian O. Marty
        5015 Grand Ridge Drive, Suite 100
        West Des Moines, Iowa 50265
        Telephone:  (515) 223-4567
        Facsimile:  (515) 2223-8887
        E-Mail: goplerud@sagwlaw.com
             marty@sagwlaw.com

        *Counsel for Plaintiffs*