IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| FASTRICH, ET AL., | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | **CASE NO. 1:17-cv-00615-SJD** **Hon. Susan J. Dlott** |
| CONTINENTAL GENERAL INSURANCE COMPANY, ET AL. | § § § | |
| Defendants. | § § § § | |

## AMENDED STIPULATION AND AGREEMENT OF SETTLEMENT

This Amended Stipulation and Agreement of Settlement (the "Amended Producer Class Action Settlement Agreement") is made pursuant to Rule 23 of the Federal Rules of Civil Procedure in the above-titled litigation (the "Producer Class Action") and amends the Producer Class Action Settlement Agreement filed with this Court on February 4, 2019. Subject to the approval of this Court, this Amended Producer Class Action Settlement Agreement is entered into among Plaintiffs John Fastrich, Universal Investment Services, Inc., and Reginald J. Good (collectively, "Representative Plaintiffs"), on behalf of themselves and each of the Class Members (as defined below), and Defendants Continental General Insurance Company ("CGI"), Great American Financial Resources, Inc. ("GAFRI"), American Financial Group, Inc. ("AFG"), Loyal American Life Insurance Company ("LALIC") and American Retirement Life Insurance Company ("ARLIC"). The Representative Plaintiffs and Defendants are referred to here as the "Settling Parties" or "Parties" and each individually as a "Party." The Parties intend this Amended Producer Class Action Settlement Agreement to resolve, discharge, and settle the Released Claims finally and forever according to the terms and conditions set forth below.

- 1 -

## I.     RECITALS

WHEREAS, the Parties hereto state the following:

## A.     The Producer Litigation

On October 26, 2016, a class action complaint styled *John Fastrich, et al. v. Continental General Insurance Company Inc., et al.*, Case No. 8:16-CV-487, was filed in the United States District Court for the District of Nebraska (the "Nebraska Action").  It named CGI, GAFRI, AFG, and Cigna Corporation ("Cigna") as defendants.  The defendants moved to dismiss the complaint, the plaintiffs voluntarily dismissed AFG and Cigna, and, by decision and order filed August 21, 2017, the Nebraska Court dismissed the plaintiffs' tortious interference claim but denied the defendants' motion with respect to the plaintiffs' breach of contract and unjust enrichment claims. The Nebraska Court also dismissed GAFRI for lack of personal jurisdiction.  LALIC and ARLIC were not named parties to the Nebraska Action.

On September 14, 2017, Representative Plaintiffs filed claims similar to those raised in the Nebraska Action against GAFRI in the above-titled Producer Class Action.  The First Amended Class Action Complaint is attached hereto as Exhibit A (the "Complaint").  The Complaint asserts breach of contract and unjust enrichment causes of action, as well as violations of the Nebraska Wage Payment and Collection Act, Neb. Stat. § 48-1228 *et seq.*  Representative Plaintiffs allege that they previously sold insurance policies for Defendants, including life, Medicare supplements and long-term care insurance policies.  Representative Plaintiffs claim that they and other Class Members were harmed when Defendants obtained state "approval for various new products" and thereafter "began contacting existing policyholders and replacing the in-force policies with the new products."  Representative Plaintiffs contend that Defendants "instructed policyholders to switch policies when receiving rate increase letters" and that when existing policies were replaced

with new policies, the existing producers of record were terminated and replaced with new producers of record, some of whom were in-house producers. Representative Plaintiffs claim that they and other similarly situated former-producers lost initial, renewal, and override commissions on policies that were replaced. Representative Plaintiffs allege that the policy replacements caused many producers to become "non-vested" pursuant to their agreements with Defendants and allege that Defendants have not complied with the vesting provisions in their agreements with the Class Members. Representative Plaintiffs also allege that contracts with Defendants entitled them to receive commissions on premium increases for long-term care insurance policies issued prior to January 2000. Representative Plaintiffs further contend that Defendants breached their contracts with Representative Plaintiffs and other Class Members when they did not remit non-vested commissions up the line to the next agent, allegedly retaining commissions from non-vested agents, and did not pay commissions on premium increases. Defendants expressly deny Representative Plaintiffs' allegations in the Nebraska Action and the above-titled Producer Class Action.

### B. Settlement Negotiations

The Nebraska Court stayed discovery pending the outcome of a mediation among the Parties, presided over by the mediator, retired Illinois Circuit Court Judge Hon. Richard Neville, which began on January 26, 2018 at the offices of JAMS in Chicago, Illinois (the "Mediation"). The January 26, 2018 session was attended by Representative Plaintiffs' counsel, CGI's counsel, GAFRI's counsel, and LALIC and ARLIC's counsel. Although substantial progress was made, no agreement was initially reached at the January 26, 2018 session of the Mediation. With the assistance of Judge Neville, discussions among the Parties continued, and the Parties reached an agreement on April 23, 2018, subject to this Court's approvals as provided in this Agreement. On

May 11, 2018, GAFRI and Representative Plaintiffs notified this Court of the tentative settlement of the Producer Class Action and, on May 16, 2018, this Court suspended the briefing schedule for GAFRI's motion to dismiss pending the outcome of this Settlement. Similarly, on or about January 31, 2019, CGI and Representative Plaintiffs filed a joint notice of conditional settlement with the Nebraska Court, pursuant to which the Nebraska Court entered an order staying the Nebraska Action pending outcome of this Settlement and the Producer Class Action.

### C. Materiality of Recitals

Each of the foregoing Recitals represents an integral and material component of this Amended Producer Class Action Settlement Agreement and is incorporated by reference into the remaining provisions of this Agreement.

### II. TERMS OF THE SETTLEMENT

IT IS HEREBY STIPULATED AND AGREED, by and among the Representative Plaintiffs (individually and in their representative capacity on behalf of the Class Members), by and through their duly authorized counsel and Defendants, by and through their duly authorized counsel, that this Producer Class Action and all matters that have been, could have been or could be raised in the Producer Class Action are hereby settled and compromised, that this Producer Class Action will be dismissed on the merits and with prejudice as to Defendants, and that the Released Plaintiffs' Claims will be released as to Defendants and all other Releasees based upon the terms and conditions set out in this Amended Producer Class Action Settlement Agreement (including the Release), subject to the Court's approval and such approval becoming Final.

### A. Definitions

1. As used in this Amended Producer Class Action Settlement Agreement, the following capitalized terms have the following meanings, unless a Section or Subsection of this

Amended Producer Class Action Settlement Agreement provides otherwise. The definitions in this Agreement are intended to have substance and effect and are considered a material part of all terms and conditions in this Agreement.

a. "Approval Date" means the date on which the Court enters the Order Approving Settlement and Final Judgment.

b. "Attorneys' Fees, Expenses and Service Award Application" means the application for fees, expenses, and Service Award to be made by Class Counsel pursuant to paragraphs 12 *et seq*. below.

c. "Attorneys' Fees and Expenses Award" means the fees and expenses awarded by the Court to Class Counsel (and any other counsel representing Representative Plaintiffs).

d. "Authorized Claim" means a claim for recovery from an Authorized Claimant that has been found to be timely and valid under the terms of this Amended Producer Class Action Settlement Agreement.

e. "Authorized Claimant" means a Class Member (or the representative of such Class Member, including, without limitation, agents, administrators, executors, heirs, predecessors, successor, affiliates or assigns) whose claim for recovery has been found to be timely and valid under the terms of this Amended Producer Class Action Settlement Agreement.

f. "Claim" or "Claims" means any and all actions, causes of action, proceedings, adjustments, executions, offsets, contracts, judgments, obligations, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, variances, covenants, trespasses, damages, demands (whether written or oral), agreements, promises, liabilities, controversies, costs, expenses, attorneys' fees and losses of any sort whatsoever, whether in law,

in admiralty or in equity, and whether based on a United States federal, state or foreign statutory or common-law United States federal, state or foreign statutory or common-law right of action or otherwise, foreseen or unforeseen, matured or unmatured, known, accrued or not accrued, existing now or to be created in the future, including "Unknown Claims" (as defined below).

       g.    "Claim Form" means the form that Class Members must submit to the Settlement Administrator in order to receive relief pursuant to Section I of this Amended Producer Class Action Settlement Agreement, which will, subject to Court approval, be substantially in the form set out in Exhibit B.

       h.    "Settlement Class" or "Settlement Class Members" means all persons or entities that, from October 25, 2011 through the Effective Date of the Settlement Agreement, lost or otherwise were not paid commissions that were or would have been payable on, or attributable to, insurance policies or products issued or sold by the Defendants or Releasees as a result of Defendants or their affiliates': (1) failing to pay Commissions on premiums paid by policyholders due to premium rate increases on long-term care insurance policies; (2) failing to properly calculate and/or pay Commissions in accordance with the vesting provisions of any agreement(s) with any Defendants; or (3) replacing any person or entity as the agent of record in connection with a sale of any insurance policy; provided, however, that Settlement Class or Class Members shall not include: (i) persons or entities that previously released any of the Claims raised in the Nebraska Action or the Producer Class Action; (ii) Defendants; or (iii) Releasees. Also excluded from the Settlement Class are the persons and/or entities who request exclusion from the Settlement Class within the time period set by the Court in the Preliminary Approval Order.

i.      "Class Counsel" means the following law firms, including all of its attorneys, employees, and representatives: Shindler, Anderson, Goplerud & Weese, PC; Peiffer Wolf Carr & Kane, APLC; and Rosca Law, LLC.

j.      "Class Notice" means the notice described in Section E of this Amended Producer Class Action Settlement Agreement that will be disseminated to Settlement Class Members to inform them of the proposed Settlement, which notice shall, subject to Court approval, be substantially in the form set out in Exhibit C to this Amended Producer Class Action Settlement Agreement.

k.      "Commissions" means initial commissions, renewal commissions, override commissions, or any other commissions or any other payments related in any way to commissions.

l.      "Complaint" means the First Amended Class Action Complaint attached hereto as Exhibit A.

m.      "Complete Bar Order" means that portion of the Order Approving Settlement and Final Judgment, the text of which will be substantially in the form set out in paragraph 15 of Exhibit D, which the Settling Parties will ask the Court to enter and which is an essential term of this Settlement.

n.      "Controlling Interest" means an interest in an entity where such interest is sufficient to allow the interest holder directly or indirectly to control the direction of the management and policies of the entity, whether through ownership of voting shares, by contract, or otherwise.

o.      "Court" means the United States District Court for the Southern District of Ohio.

p. "Defendants" means all persons and entities named as defendants at any time in the Producer Class Action or the Nebraska Action, as well as all Releasees as defined further below.

q. "Effective Date" means the first date by which all of the events and conditions specified hereafter occur: (i) execution of this Amended Producer Class Action Settlement Agreement and such other documents as may be required to obtain final Court approval of the Stipulation in a form satisfactory to the Settling Parties, (ii) the Settlement Fund has been established as provided below, (iii) Defendants have not exercised their option to terminate the Amended Producer Class Action Settlement Agreement pursuant to Section M, hereof, (iv) the Court has approved the Class Notice, substantially in the form of Exhibit C hereto, (v) the Court has entered the Judgment that, *inter alia*, dismisses with prejudice the Producer Class Action and (vi) the Judgment has become Final, as defined in Section A(1)(s) hereof.

r. "Fairness Hearing" means the hearing at or after which the Court will make a decision (i) whether to approve the Settlement as fair, reasonable and adequate; (ii) whether to finally certify the Settlement Class; and (iii) whether to grant the Attorneys' Fees, Expenses and Service Award Application.

s. "Final" means, when used in connection with any court judgment or order, that the judgment or order will be final: (1) if no appeal is taken, on the date on which the time to appeal from the judgment or order (including any potential extension of time) has expired; or (2) if any appeal is taken from the order and judgment, the date on which all such appeals—including any petitions for rehearing en banc, petitions for certiorari or any other form of review and any related appeals or petitions, including as to any appeal bond—have been finally disposed of, such

that the time to appeal therefrom (including any potential extensions of time) has expired, in a manner resulting in an affirmance of the relevant judgment or order.

    t.  "Future Commissions" means Commissions earned after the Effective Date of this Amended Producer Class Action Settlement Agreement under the terms and conditions of a Settlement Class Member's then-existing and in-force agreement with Defendants, if any, and calculated and paid on the same basis as Defendants are currently calculating and paying commissions due under such agreements; provided, further that Future Commissions do not include (1) Commissions on premiums paid by policyholders due to premium rate increases on long-term care insurance policies; (2) Commissions arising from, based on, or related to the failure to properly calculate and/or pay Commissions in accordance with the vesting provisions of any agreement(s) with Defendants; or (3) Commissions arising from or related to Defendants' allegedly improper replacement of any person or entity as the agent of record in connection with a sale of an insurance policy.

    u.  "Judgment" means the final judgment to be entered by the Court pursuant to the Order Approving Settlement and Final Judgment, which shall be substantially in the form set out in Exhibit D to this Amended Producer Class Action Settlement Agreement.

    v.  "Net Cash Settlement Amount" means the balance remaining in the Settlement Fund (including any interest that has accrued) after the payments described in paragraph 18(1)-(3) below are made from the Settlement Fund.

    w.  "Notice and Administrative Expenses" means all expenses associated with administration and implementation of this Settlement, including the Settlement Administrator's fees and expenses; provided, however, that Notice and Administrative Expenses shall not include the Attorneys' Fees and Expenses.

x.     "Objection Date" means the date by which objections to the Settlement proposed in this Amended Producer Class Action Settlement Agreement must be filed with the Court and served on counsel as set out in the Preliminary Approval Order.

y.     "Order Approving Settlement and Final Judgment" means the order to be entered by the Court approving the Settlement and this Amended Producer Class Action Settlement Agreement as contemplated in Section K of this Amended Producer Class Action Settlement Agreement, which order shall be substantially in the form set out in Exhibit D to this Amended Producer Class Action Settlement Agreement.

z.     "Plan of Allocation" means the terms and procedures for allocating the Net Cash Settlement Amount among, and distributing the Net Cash Settlement Amount to, Authorized Claimants, which shall, subject to Court approval, be substantially in the form attached hereto as Exhibit E.

aa.     "Preliminary Approval Date" means the date on which the Court enters the Preliminary Approval Order.

bb.     "Preliminary Approval Hearing" means the hearing at or after which the Court preliminarily approves the proposed Settlement.

cc.     "Preliminary Approval Order" means the order to be entered by the Court concerning notice, administration, and the Fairness Hearing as contemplated in Section J of this Amended Producer Class Action Settlement Agreement, and granting leave to file the First Amended Complaint which order shall be substantially in the form set out in Exhibit A to this Amended Producer Class Action Settlement Agreement.

dd.     "Amended Producer Class Action Settlement Agreement" means this Stipulation and Agreement of Settlement and its Exhibits attached hereto, including any

subsequent written amendments to the Stipulation and Agreement of Settlement and/or to its Exhibits.

ee.    "Qualified Settlement Fund" means a fund within the meaning of Treasury Regulations § 1.468B-1.

ff.    "Recognized Claim" shall have the meaning attributed to it in the Plan of Allocation.

gg.    "Recognized Loss" is the amount of a claim under the Plan of Allocation and is the number used to calculate an Authorized Claimant's Recognized Claim.

hh.    "Release" means the release set forth in Section I of this Amended Producer Class Action Settlement Agreement.

ii.    "Released Claims" means any and all Claims, debts, demands, actions, causes of action, specialties, covenants, contracts, variances, damages, executions, rights, suits, sums, accounts, reckonings, presentments, extents and any other liabilities, fixed or contingent, matured or not matured, of or by the Settlement Class, or any member or representative of the Settlement Class, as against the Releasees, including both known claims and Unknown Claims, whether class or individual in nature, that were asserted, could have been asserted, could in the future be asserted, or are related to the claims that were, could have been, or could in the future be asserted, in the Producer Class Action or in any other action or proceeding, or otherwise, by the Settlement Class, or by any member or representative of the Settlement Class (including, without limitation, any claims for alleged violations of federal or state statutory or common law, or any other law, and for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, or liability whatsoever), arising from, based on, or relating to the Claims arising out of or related to any of the facts, acts, events, transactions, occurrences, courses of

conduct, agreements, business practices, representations, omissions, circumstances, or other matters referenced in the amended complaints filed in the Producer Class Action or Nebraska Action attached to this Agreement as Exhibits A and G, whether any such Claim was or could have been asserted by any Releasing Party on its own behalf or on behalf of other Persons. The term "Released Claims" does not include any claims: (i) arising from, based on, or relating to Future Commissions, as defined herein, or (ii) to enforce this Amended Producer Class Action Settlement Agreement or any other documents executed in connection with this Producer Class Action Settlement; provided, further that notwithstanding anything to the contrary contained in this Amended Producer Class Action Settlement Agreement: (i) no release shall be made by any Party of its own attorneys, and (ii) if any attorney performed work for more than one Party, a Party does not release that attorney for the work such attorney performed for the Party, but does release such attorney for the work such attorney performed for any other Party. It is understood that any in-house attorney for any Defendant is intended to be included in and fully released hereunder.

jj. "Releasee" means each and every one of, and "Releasees" means all of, (i) Defendants, (ii) HC2 Holdings, Inc., (iii) Cigna Health and Life Insurance Company, and (iv) the past and present officers, directors, employees, officials, members, partners, principals, agents, representatives, attorneys (including any and all in-house and outside counsel including, without limitation, Defendants' Counsel), advisors, administrators, auditors (including any and all internal and external auditors), accountants, actuaries, consultants, fiduciaries, representatives, service providers, successors-in-interest, parents, subsidiaries, affiliates, trustees, insurance carriers, reinsurers, estates, heirs, executors, beneficiaries, trusts, and assigns of, including all persons

controlling, controlled by, or under common control with, any or all of the above persons or entities referenced in this paragraph.

   kk. "Releasor" means each and every one of, and "Releasors" means all of, (i) Representative Plaintiffs, (ii) all other Settlement Class Members, (iii) their respective past or present parents, predecessors, successors, current and former affiliates, divisions, business units, joint ventures, subsidiaries, assigns, any entities in which any Releasor has or had a Controlling Interest or that has or had a Controlling Interest in him, her, or it, and any other person or entity (including any governmental entity) claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of Representative Plaintiffs or any other Class Member and (iv) the respective past and present officers, directors, employees, officials, members, partners, principals, agents, representatives, attorneys (including any and all in-house and outside counsel, including, without limitation, Representative Plaintiffs' Counsel), advisors, administrators, auditors (including any and all internal and external auditors), accountants, actuaries, consultants, fiduciaries, representatives, service providers, successors-in-interest, parents, subsidiaries, affiliates, trustees, insurance carriers, reinsurers, estates, heirs, executors, beneficiaries, trusts, and assigns of any or all of the above persons or entities referenced in this paragraph.

   ll. "Service Award" means an application filed by Plaintiffs for compensation for the Representative Plaintiffs' time devoted to this Action and reimbursement of the Representative Plaintiffs' expenses.

   mm. "Settlement" means the settlement terms, conditions and other provisions that are memorialized in this Amended Producer Class Action Settlement Agreement.

   nn. "Settlement Administrator" means Strategic Claims Services, 225 State Road, Media, PA 19063.

oo. "Settlement Fund" means the escrow account to be established by Class Counsel, which shall be an interest-bearing account into which the Settlement Payment will be paid pursuant to Section C of this Amended Producer Class Action Settlement Agreement and which will be treated for tax purposes as a single Qualified Settlement Fund, as defined herein.

pp. "Settlement Fund Agent" means the escrow agent for the Settlement Fund. The Settlement Administration Agent will be Strategic Claims Services.

qq. "Settling Parties" means all Parties to this Amended Producer Class Action Settlement Agreement.

rr. "Settlement Payment" means $1,250,000.

ss. "Termination Date" means that date on which any of the Settling Parties provides notice that he, she or it is exercising a right to terminate this Amended Producer Class Action Settlement Agreement under Section M of this Amended Producer Class Action Settlement Agreement.

tt. "Unknown Claims" means any and all Released Claims that any Releasor does not know or suspect exists with respect to one or more Releasees at the time of the release of the Releasees, arising out of or related to the conduct alleged in the Complaint. As to all Claims released in this Amended Producer Class Action Settlement Agreement, each of the Representative Plaintiffs expressly waives, and each Class Member shall be deemed to have waived, and by operation of the Order Approving Settlement and Final Judgment shall have expressly waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States or of any other country, or any principle of federal or common law, that is similar, comparable or equivalent to California Civil Code Section 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the

> release, which if known by him or her must have materially affected his or her settlement with the debtor.

Representative Plaintiffs acknowledge, and all other Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of Unknown Claims in the Claims released pursuant to the Amended Producer Class Action Settlement Agreement was separately bargained for and is a key element of this Amended Producer Class Action Settlement Agreement. Representatives Plaintiffs, on behalf of themselves and all Class Members, and Defendants agree that the above waiver of rights under Section 1542 is an essential term of this Amended Producer Class Action Settlement Agreement.

### B. Class Certification

2. For purposes of this Settlement only, and subject to approval of the Court in accordance with Rule 23(e) of the Federal Rules of Civil Procedure, the Settling Parties stipulate to the certification of the Settlement Class, as defined herein and in the Complaint; the appointment of John Fastrich, Universal Investment Services, Inc., and Reginald Good as Class Representatives; and the appointment of Shindler, Anderson, Goplerud & Weese, PC, Peiffer Wolf Carr & Kane, APLC and Rosca Law, LLC as Class Counsel. This stipulation is strictly for the purposes of this Amended Producer Class Action Settlement Agreement as provided herein, and shall not and may not be used in any other proceeding as any authority under Fed. R. Civ. P. 23 for or against certification of any other class.

### C. Settlement Consideration

3. Prior to or upon entry of the Preliminary Approval Order, Class Counsel shall cause to be established the Settlement Fund at a financial institution by Class Counsel. In consideration of the Settlement of Claims asserted in this Producer Class Action, and subject to the terms and conditions of the Amended Producer Class Action Settlement Agreement, Defendant GAFRI shall

deposit the Settlement Payment into the Settlement Fund by wire transfer within ten (10) business days following the date of entry of the Preliminary Approval Order, provided Defendants have received the name, address and wire payment information for both the payee and recipient of the Settlement Payment and a properly completed Form W-9 for the payee of the Settlement Payment. The payment shall be made by GAFRI and shall be made on behalf of all Defendants. No Defendant other than GAFRI shall be responsible for making the payment into the Settlement Fund. Notwithstanding the foregoing, GAFRI shall have no obligation to deposit the Settlement Payment if other Defendants have not provided their respective share of the Settlement Payment – determined by separate and confidential agreement – to GAFRI or to its counsel's trust account.

### D. Notice to Class Members and Other Communications

4. Subject to the requirements of the Preliminary Approval Order, Class Counsel shall cause the Class Notice and the Claim Form, substantially in the forms annexed hereto as Exhibits C and B, respectively, to be mailed, by first class mail, postage prepaid, within twenty (20) days after the entry of the Preliminary Approval Order, to all Settlement Class Members at the address of each such person as set forth in the records of Defendants. Defendants shall cooperate in the administration of the Settlement only to the extent reasonably necessary to effectuate its terms, and Defendants shall use reasonable efforts to provide to the Settlement Administrator, no later than five (5) business days after entry of the Preliminary Approval Order, a list of potential Settlement Class Members (consisting of names and addresses), in electronic form. Class Counsel shall, within fifteen (15) days after the mailing of the Class Notice and Claim Form, file with the Court proof of mailing of the Class Notice and Claim Form. The date upon which Notice is first sent out shall be the "Notice Date."

5.      Defendants expressly reserve the right to communicate with and respond to inquiries by producers, but have no obligation to do so except as otherwise expressly provided for in the Settlement.

6.      Any Party to the Settlement or its counsel wishing to issue a press release or other public statement shall provide counsel for all other Parties to the Settlement reasonable opportunity to review and comment upon the release.

7.      The Parties to the Settlement shall cooperate to ensure that any media statements regarding the settlement are balanced, fair, accurate and non-disparaging.

**E.      Notice and Administrative Expenses**

8.      Notice and Administrative Expenses shall be paid out of the Settlement Fund.

**F.      Procedures for Objections to the Settlement and Exclusions from the Class**

9.      Any Class Member who wishes to object to the fairness, reasonableness or adequacy of this Amended Producer Class Action Settlement Agreement, to any term(s) of this Agreement or to the proposed Attorneys' Fees and Expenses Award may do so no later than thirty (30) days before the Fairness Hearing, and subject to the requirements set out in the Preliminary Approval Order.  Class Members who fail to mail their timely written objections to the Clerk of Courts and the designated counsel for Plaintiffs and Defendants in the manner specified in the Preliminary Approval Order shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Amended Producer Class Action Settlement Agreement.

10.      Objectors' attorneys must file notice(s) of appearance.

11.      Class Members who wish to exclude themselves from the Class must submit a written statement requesting exclusion from the Class no later than thirty (30) days before the Final

Fairness Hearing (the "Exclusion Deadline"). Such written request for exclusion must contain the name, address, and telephone number of the person requesting exclusion, must be returned by mail to the Claims Administrator at a specified address, must be postmarked on or before the Exclusion Deadline, and must otherwise be submitted in accordance with the Class Notice. The date of the postmark on the return mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted. Any individual who opts out of the Class will not be entitled to any recovery under the Amended Producer Class Action Settlement Agreement and will not be bound by the Amended Producer Class Action Settlement Agreement or have any right to object, appeal or comment thereon. Class Members who do not submit a valid and timely request for exclusion on or before the Exclusion Deadline shall be bound by all terms of the Amended Producer Class Action Settlement Agreement and any Judgment entered in this Class Action if the Settlement is approved by the Court. Within five (5) days after the Exclusion Deadline, the Claims Administrator shall provide Defendants with a list of the Class Members who have requested exclusion from the Class.

   **G.**  **Attorneys' Fees, Expenses and Service Awards**

   12.  Class Counsel shall file and serve the Attorneys' Fees, Expenses and Service Awards Application not later than twenty-one (21) days prior to the Fairness Hearing.

   13.  Any Attorneys' Fees, Expenses and Service Awards will be subject to approval by the Court. Attorneys' Fees, Expenses and Service Awards shall not exceed $450,000.

   14.  The Attorneys' Fees, Expenses and Service Awards shall be paid to Class Counsel (as designated by the Court) from the Settlement Fund established pursuant to Section C above within fifteen (15) business days from the date on which the Court makes such award; provided, however that such payments shall be subject to an agreement by Class Counsel providing that such

payment (or relevant portion of such payment) shall be returned to the Settlement Fund within five (5) business days from the Class Counsel receiving notice that (i) the Court's approval of the Amended Producer Class Action Settlement Agreement has been reversed on appeal and such reversal has become Final and no longer subject to appeal or (ii) the award made to Class Counsel has been modified on appeal.

**H.   Settlement Administrator**

15.   The Settlement Administrator shall be appointed by Class Counsel subject to the approval of the Defendants, which approval shall not be unreasonably withheld.

16.   The Settlement Administrator shall administer the process of receiving, reviewing and approving or denying claims under Class Counsel's supervision and subject to the jurisdiction of the Court. The Defendants shall have no responsibility for the administration of the Settlement and shall have no liability to the Class Members or Class Counsel in connection with this administration. Class Counsel shall designate a contact person at the Settlement Administrator to whom Defendants may refer all inquiries they receive from potential claimants.

17.   The Settlement Administrator shall receive Claims and determine first, whether the Claim is an Authorized Claim, in whole or in part; and second, each Authorized Claimant's pro rata share of the Net Cash Settlement Amount based upon each Authorized Claimant's Recognized Loss amount (as set forth in the Plan of Allocation described in the Notice annexed hereto as Exhibit E, or in such other Plan of Allocation as the Court approves).

18.   The Settlement Fund shall be applied as follows:

(1) to pay counsel's attorneys' fees and expenses, with interest thereon and the Service Award and expenses of Plaintiffs (the "Attorneys' Fees, Expenses and Service Awards"), if and to the extent allowed by the Court;

(2) to pay all the costs and expenses reasonably and actually incurred in connection with providing notice, locating Settlement Class Members, soliciting Settlement Class claims, assisting with the filing of claims, administering and distributing the Settlement Fund to Authorized Claimants, processing Claim Forms, and paying escrow fees and costs, if any;

(3) to pay any taxes and tax expenses; and

(4) to distribute the balance of the Settlement Fund to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or order of the Court.

19.    The Plan of Allocation attached hereto as Exhibit E is not a necessary term of this Amended Producer Class Action Settlement Agreement, and it is not a condition of this Amended Producer Class Action Settlement Agreement that any particular Plan of Allocation be approved.

20.    Each Authorized Claimant shall be allocated a pro rata share of the Net Cash Settlement Amount based on his, her or its Recognized Loss compared to the total Recognized Losses of all Authorized Claimants. This is not a claims-made settlement. Defendants shall not be entitled to get back any of the Settlement consideration once the Effective Date has occurred.

21.    Any Settlement Class Member who does not submit a valid Claim Form will not be entitled to receive any distribution from the Net Cash Settlement Amount, but will otherwise be bound by all of the terms of this Amended Producer Class Action Settlement Agreement and the Settlement, including the terms of the Final Judgment to be entered in the Producer Class Action and the Releases provided for herein, and will be barred and enjoined from bringing any action against the Releasees concerning the Released Claims.

22.    Class Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Cash Settlement Amount by the Settlement Administrator. Defendants shall have no liability, obligation or responsibility for the administration of the

Settlement or disbursement of the Net Cash Settlement Amount. Defendants shall not be permitted to review, contest or object to any Claim Form or any decision of the Settlement Administrator or Class Counsel with respect to accepting or rejecting any Claim Form or Claim for payment by a Settlement Class Member. Class Counsel shall have the right, but not the obligation, to waive what they deem to be formal or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

23.     For purposes of determining the extent, if any, to which a Settlement Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

a.      Each Settlement Class Member shall be required to submit a Claim Form substantially in the form attached hereto as Exhibit B, supported by such documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as the Settlement Administrator or Class Counsel, in their discretion, may deem acceptable.

b.      All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice, which the Parties will request to be 45 days after mailing, unless such deadline is extended by Order of the Court. Any Settlement Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Cash Settlement Amount or payment pursuant to this Amended Producer Class Action Settlement Agreement (unless, by Order of the Court, late-filed Claim Forms are accepted), but shall in all other respects be bound by all of the terms of this Amended Producer Class Action Settlement Agreement and the Settlement including the terms of the Final Judgment and the Releases provided for herein, and will be barred and enjoined from bringing any action against the Releasees concerning the Released Claims. A Claim Form shall be deemed to be

submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.

       c.      Each Claim Form shall be submitted to and reviewed by the Settlement Administrator, under the supervision of Class Counsel, who shall determine in accordance with this Amended Producer Class Action Settlement Agreement, the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below;

       d.      Claim Forms that do not meet the submission requirements may be rejected. Prior to rejecting a Claim in whole or in part, the Settlement Administrator shall communicate with the Claimant in writing, email or by telephone to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted. The Settlement Administrator, under the supervision of Class Counsel, shall notify, in a timely fashion and in writing, all Claimants whose Claim they propose to reject in whole or in part, setting forth the reasons therefore, and shall indicate in such notice that the Claimant whose claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below.

       e.      If any Claimant whose claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Settlement Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a Claim cannot be otherwise resolved, Class Counsel shall thereafter present the request for review to the Court.

f.      The administrative determinations of the Settlement Administrator in accepting and rejecting Claims shall be presented to the Court, on notice to Defendants' Counsel, for approval by the Court.

24.     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided, however that such investigation and discovery shall be limited to that Claimant's status as a Class Member and the validity and amount of the Claimant's Claim. No discovery shall be allowed on the merits of the Producer Class Action or Settlement in connection with the processing of Claim Forms.

25.     Class Counsel will apply to the Court, on notice of Defendants' Counsel, for a Class Distribution Order: (a) approving the Settlement Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Settlement Fund; and (c) if the Effective Date has occurred, directing payment of the Net Cash Settlement Amount to the Authorized Claimants.

26.     The Net Cash Settlement Amount shall be distributed to Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Class Notice and approved by the Court. Any such Plan of Allocation is not a part of this Stipulation. No funds from the Net Cash Settlement Amount shall be distributed to Authorized Claimants until the Effective Date. If there is any balance remaining in the Net Cash Settlement Amount after six (6) months from the date of distribution of the Net Cash Settlement Amount (whether by reason of tax refunds, uncashed checks, or otherwise), Class Counsel shall, if feasible, reallocate such balance among Authorized Claimants in an equitable and economic fashion. Thereafter, any balance that still

remains in the Net Cash Settlement Amount shall be donated to one or more secular §501(c)(3) organization(s) selected by Class Counsel, with prior written notice to Defendants' counsel.

27.     Payment pursuant to the Class Distribution Order shall be final and conclusive against all Class Members who are Authorized Claimants.

28.     All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.

29.     The Settlement Administrator is to be charged with, among other things, distribution of the Class Notice, operation of a settlement website relating to both this Settlement, setting up and running a toll-free center to respond to producer calls, receipt and handling of requests for information to assist producers with potential claims, receipt of requests for exclusion and distribution of settlement relief to Class Members in the Settlement.

**I.     Releases and Waivers**

30.     Pursuant to the Order Approving Settlement and Final Judgment, without further action by anyone, and whether or not a Claim Form has been executed and/or delivered by or on behalf of any such Settlement Class Member, on and after the Effective Date, Representative Plaintiffs and all other Settlement Class Members, on behalf of themselves and their other Releasors, for good and sufficient consideration, and all Releasors shall be deemed to have, and by operation of law and of the Order Approving Settlement and Final Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged:

        a.     all Released Claims against each and every one of the Releasees, including Defendants' Counsel;

b. all Claims, damages, and liabilities as to each and every one of the Releasees to the extent that any such Claims, damages, or liability relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, (i) the prosecution, defense, or settlement of the Producer Class Action or Nebraska Action, (ii) the Amended Producer Class Action Settlement Agreement, (iii) the Settlement terms and their implementation, (iv) the provision of notice in connection with the proposed Settlement, and/or (v) the resolution of any Claim Forms filed in connection with the Settlement; and

c. all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Representative Plaintiff's counsel (including Class Counsel) or any other counsel representing Representative Plaintiff or any other Settlement Class Member in connection with or related in any manner to the Producer Class Action or Nebraska Action, the settlement of the Producer Class Action or Nebraska Action, or the administration of the settlement of the Producer Class Action or Nebraska Action, except to the extent otherwise specified in the Amended Producer Class Action Settlement Agreement.

31. Pursuant to the Order Approving Settlement and Final Judgment, without further action by anyone, on and after the Effective Date, Class Counsel, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, Affiliates, assigns, and any person or entity claiming by or through any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged Defendants' Counsel and all other Releasees from any and all Claims that relate in any way to any and all acts directly or indirectly relating to the prosecution,

defense, or settlement of the Producer Class Action or the Nebraska Action or to the Amended Producer Class Action Settlement Agreement, except to the extent otherwise specified in the Amended Producer Class Action Settlement Agreement.

Pursuant to the Order Approving Settlement and Final Judgment, without further action by anyone, on and after the Effective Date, Defendants, Releasees, and Defendants' Counsel, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, Affiliates, assigns, and any person or entity claiming by or through any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged Representative Plaintiffs and their agents, advisors, and counsel, including Class Counsel, from any and all Claims that relate to any and all acts directly or indirectly relating to the prosecution, defense, or settlement of the Producer Class Action or the Nebraska Action or to the Amended Producer Class Action Settlement Agreement, except to the extent otherwise specified in the Amended Producer Class Action Settlement Agreement.

32.     Nothing in the Order Approving Settlement and Final Judgment shall bar any action or Claim by the Settling Parties or their counsel to enforce the terms of the Amended Producer Class Action Settlement Agreement or the Order Approving Settlement and Final Judgment.

33.     Pending final determination of whether the Settlement should be approved and applied in the Producer Class Action, neither Representative Plaintiffs, nor any of the Settlement Class Members, shall commence, maintain or prosecute against Defendants or Releasees, or any of them, any action or proceeding in any court or tribunal asserting or relating to any of the Released Claims.

34.     The Releasors and each of them agree and covenant not to sue or prosecute, institute or cooperate in the institution, commencement, filing, or prosecution of any suit or proceeding in any forum based upon or related to any Released Claims against any Releasee.

35.     All persons who are, have been, could be, or could have been alleged to be joint tortfeasors, co-tortfeasors, co-conspirators, or co-obligors with any of the Releasees respecting the Released Claims or any of them, are hereby, to the maximum extent permitted by law, barred and permanently enjoined from making, instituting, commencing, prosecuting, participating in or continuing any Claim, claim-over, cross-claim, action, or proceeding, however denominated, regardless of the allegations, facts, law, theories or principles on which they are based, in this Court or in any other court or tribunal, against the Releasees or any of them with respect to the Released Claims.  All such claims are hereby fully and finally barred, released, extinguished, discharged, satisfied, and made unenforceable to the maximum extent permitted by law, and no such claim may be commenced, maintained, or prosecuted against any Releasee.

36.     It is an essential element of this Agreement that the Releasees obtain the fullest possible release from further liability to anyone relating to the Released Claims, and it is the intention of the Parties to this Amended Producer Class Action Settlement Agreement that the Amended Producer Class Action Settlement Agreement eliminate any further risk and liability of the Releasees relating to the Released Claims.  The Parties therefore agree that the Court shall include in the Final Approval Order a Bar Order that includes all of the releases, waivers, discharges, and covenants not to sue included in this section of this Amended Producer Class Action Settlement Agreement.  Such a Bar Order is a material requirement for settlement as provided in this Amended Producer Class Action Settlement Agreement.

37.     Each of the releases, waivers, and covenants not to sue contained in this Section was separately bargained for and is an essential element of the Amended Producer Class Action Settlement Agreement.

**J.     Preliminary Approval Hearing and Preliminary Approval Order**

38.     Within twenty (20) business days or sooner following the execution of this Amended Producer Class Action Settlement Agreement, Representative Plaintiffs shall file a motion for Preliminary Approval of the Amended Producer Class Action Settlement Agreement, which motion Defendants shall not oppose if consistent with the terms of the Settlement.

**K.     Fairness Hearing, Order Approving Settlement and Final Judgment and Dismissal**

39.     The Settling Parties shall request that the Court schedule a Fairness Hearing within 120 days after the entry of the Preliminary Approval Order, unless otherwise ordered by the Court, at which to consider whether (i) to approve this Agreement as fair, reasonable and adequate and in the best interest of the Settlement Class; (ii) finally certify the Settlement Class; and (iii) to approve Class Counsel's request for an Attorneys' Fees and Expenses Award and Service Awards.

**L.     No Admissions**

40.     This Amended Producer Class Action Settlement Agreement, whether or not consummated, and any proceedings taken pursuant to it:

a.     shall not be offered or received against the Defendants as evidence of, or construed as or deemed to be evidence of, any presumption, concession or admission by any of the Defendants with respect to the truth of any fact alleged by plaintiffs or the validity of any claim that had been or could have been asserted against the Defendants in the Producer Class Action, the

Nebraska Action, or in any litigation, or of any liability, negligence, fault or wrongdoing of the Defendants;

        b.       shall not be offered or received against the Defendants as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Defendant, or against the Representative Plaintiffs or any other Class Members as evidence of any infirmity on the claims of the Representative Plaintiffs or the other Class Members;

        c.       shall not be offered or received against the Defendants or Releasees or against the Representative Plaintiffs or any other Class Members as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the Parties to this Stipulation, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Amended Producer Class Action Settlement Agreement; provided, however, that if this Amended Producer Class Action Settlement Agreement is approved by the Court, Defendants or Releasees may refer to it to effectuate the liability protection granted them hereunder;

        d.       shall not be construed against Defendants, Releasees, Representative Plaintiffs or any other Settlement Class Members as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial;

        e.       shall not be construed as or received in evidence as an admission, concession or presumption against Representative Plaintiffs or other Settlement Class Members or

any of them that any of their claims are without merit or that damages recoverable under the Complaint would not have exceeded the Settlement amounts; and/or

        f.    shall not be construed as or received in evidence as an admission, concession or presumption that class certification is appropriate in this Producer Class Action or the Nebraska Action.

## M. Modification or Termination of this Amended Producer Class Action Settlement Agreement

41.    This Amended Producer Class Action Settlement Agreement may not be altered, amended or modified, nor may any of its provisions be waived, except in writing signed by all Settling Parties.

42.    Any Settling Party shall have the right to terminate the Settlement if the Court does not approve the Amended Producer Class Action Settlement Agreement, or if the Court (or any appellate court) modifies the Amended Producer Class Action Settlement Agreement in any way that a Settling Party to the Settlement in good faith determines is material.

43.    Representative Plaintiffs may not terminate the Settlement based on any Attorneys' Fees, Expenses and Services Awards.

44.    Each Defendant in the Producer Class Action shall have the option (but not the obligation) to terminate the Settlement if valid exclusion requests are received from eligible Class Members as provided for by separate agreement, not to be filed with the Court unless necessary to establish that such option to terminate has been triggered; provided, however, that exercise of this termination option must be made no later than three (3) days before the date on which the Fairness Hearing is scheduled.

45.     Unless otherwise ordered by the Court, in the event the Amended Producer Class Action Settlement Agreement shall terminate, or be canceled, or shall not become effective for any reason, within five (5) business days after written notification of such event is sent by Defendants' counsel or counsel to the Settlement Fund Agent, the Settlement Payment (including accrued interest), less reasonable notice and administration expenses which have either been incurred or disbursed pursuant to Section H hereof, shall be refunded pursuant to written instructions from Defendants' counsel. If said amount or any portion thereof is not returned within thirty (30) business days after receiving written instructions from Defendants' counsel, then interest shall accrue thereon at the same rate as earned by the Settlement Payment until the date that said amount is returned.

46.     At the request of Defendants' counsel, the Settlement Fund Agent or its designee shall apply for any tax refund owed on the Settlement Payment and return the proceeds, after deduction of any expenses incurred in connection with such application(s) for refund, in accordance with the written direction of Defendants' counsel.

47.     Representative Plaintiffs have the right to terminate the Settlement if Defendants fail to timely and completely fund the Settlement in accordance with this Amended Producer Class Action Settlement Agreement.

**N.     Miscellaneous Provisions**

48.     The Parties and their counsel agree to use their best efforts to obtain Court approval of this Amended Producer Class Action Settlement Agreement, subject to Defendants' rights to terminate the Amended Producer Class Action Settlement Agreement, as provided herein.

49.     All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein. In the event of any difference between the terms of the Amended Producer

Class Action Settlement Agreement and any of the exhibits, the terms of the Amended Producer Class Action Settlement Agreement shall control.

50.     The Parties to this Amended Producer Class Action Settlement Agreement intend the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by the Representative Plaintiffs, any other Class Members and their attorneys against the Releasees with respect to the Released Claims. Accordingly, Representative Plaintiffs and Defendants agree not to assert in any forum that the Producer Class Action was brought by plaintiffs or defended by Defendants in bad faith or without a reasonable basis. The Parties hereto shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense or settlement of the Producer Class Action. The Parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's-length and in good faith by the Parties, including during a mediation conducted by a professional mediator, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

51.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

52.     The administration and consummation of the Settlement as embodied in this Amended Producer Class Action Settlement Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and litigation expenses to Class Counsel and enforcing the terms of this Amended Producer Class Action Settlement Agreement.

53.     The waiver by one Party of any provision or breach of this Amended Producer Class Action Settlement Agreement by any other Party shall not be deemed a waiver of any other

provision or any other prior or subsequent breach of this Amended Producer Class Action Settlement Agreement.

54.     This Amended Producer Class Action Settlement Agreement and its exhibits constitute the entire agreement among the Parties hereto concerning the Settlement of the Producer Class Action, and no representations, warranties or inducements have been made by any Party hereto concerning this Amended Producer Class Action Settlement Agreement and its exhibits other than those contained and memorialized in such documents.

55.     This Amended Producer Class Action Settlement Agreement may be executed in one or more original and/or faxed counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided, however, that counsel for the signatories of this Amended Producer Class Action Settlement Agreement shall exchange among themselves original signed counterparts.

56.     This Amended Producer Class Action Settlement Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Parties hereto

57.     The construction, interpretation, operation, effect and validity of this Amended Producer Class Action Settlement Agreement, and all documents necessary to effectuate it, shall be governed by the internal laws of the State of Ohio without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

58.     This Amended Producer Class Action Settlement Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties, and all Parties have contributed substantially and materially to the preparation of this Amended Producer Class Action Settlement Agreement.

59.     All counsel and any other persons executing this Amended Producer Class Action Settlement Agreement and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Amended Producer Class Action Settlement Agreement to effectuate its terms.

[SIGNATURE BLOCK ON FOLLOWING PAGE]

_____
John Fastrich

_____
Universal Investment Services

_____
Reginald J. Good

_____
Lydia M. Floyd
James P. Booker
PEIFER WOLF CARR & KANE, APLC
1422 Euclid Avenue,
Suite 1610
Cleveland, OH 44115
Telephone: (216) 589-9280
Facsimile: (888) 411-0038
Email: lfloyd@pwcklegal.com
Email: jbooker@pwcklegal.com

_____
J. Barton Goplerud
Brian O. Marty
SHINDLER, ANDERSON, GOPLERUD
& WEESE, P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265-5749
Telephone: (515) 223-4567
Facsimile: (515) 223-8887
Email: goplerud@sagwlaw.com

_____
Alan L. Rosca
ROSCALAW LLC
23250 Chagrin Blvd.,
Suite 100
Beachwood, OH 44122
Telephone: 216.570.0097
Email: arosca@roscalaw.com

_____
John Fastrich


_____
Universal Investment Services

_____
Reginald J Good (Mar 30, 2019)
Reginald J. Good


_____
Lydia M. Floyd
James P. Booker
PEIFER WOLF CARR & KANE, APLC
1422 Euclid Avenue,
Suite 1610
Cleveland, OH 44115
Telephone: (216) 589-9280
Facsimile: (888) 411-0038
Email: lfloyd@pwcklegal.com
Email: jbooker@pwcklegal.com

_____
J. Barton Goplerud
Brian O. Marty
SHINDLER, ANDERSON, GOPLERUD
& WEESE, P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265-5749
Telephone: (515) 223-4567
Facsimile: (515) 223-8887
Email: goplerud@sagwlaw.com


_____
Alan L. Rosca
ROSCALAW LLC
23250 Chagrin Blvd.,
Suite 100
Beachwood, OH 44122
Telephone: 216.570.0097
Email: arosca@roscalaw.com

_____
John Fastrich


_____
Universal Investment Services


_____
Reginald J. Good

_____
Lydia M. Floyd
James P. Booker
PEIFER WOLF CARR & KANE, APLC
1422 Euclid Avenue,
Suite 1610
Cleveland, OH 44115
Telephone: (216) 589-9280
Facsimile: (888) 411-0038
Email: lfloyd@pwcklegal.com
Email: jbooker@pwcklegal.com

_____
J. Barton Goplerud
Brian O. Marty
SHINDLER, ANDERSON, GOPLERUD
& WEESE, P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265-5749
Telephone: (515) 223-4567
Facsimile: (515) 223-8887
Email: goplerud@sagwlaw.com

_____
Alan L. Rosca
ROSCALAW LLC
23250 Chagrin Blvd.,
Suite 100
Beachwood, OH 44122
Telephone: 216.570.0097
Email: arosca@roscalaw.com

- 35 -

_____
Loyal American Life Insurance Company

_____
American Retirement Life Insurance
Company

John Hamill
Joseph A. Roselius
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606
T 312.368.4000
E john.hamill@dlapiper.com
E joseph.roselius@dlapiper.com

Chelsea Mutual
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, California 92101
T 619.699.2700
E chelsea.mutual@dlapiper.com

Carolyn A. Taggart
PORTER, WRIGHT, MORRIS AND
ARTHUR LLP
250 East Fifth Street, Suite 2200
Cincinnati, OH 45202
T 513.369.4231
E ctaggart@porterwright.com

0

---
Loyal American Life Insurance Company

John Hamill
Joseph A. Roselius
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606
T 312.368.4000
E john.hamill@dlapiper.com
E joseph.roselius@dlapiper.com

Chelsea Mutual
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, California 92101
T 619.699.2700
E chelsea.mutual@dlapiper.com

---
American Retirement Life Insurance Company

Carolyn A. Taggart
PORTER, WRIGHT, MORRIS AND
ARTHUR LLP
250 East Fifth Street, Suite 2200
Cincinnati, OH 45202
T 513.369.4231
E ctaggart@porterwright.com

0

| | |
|---|---|
| Loyal American Life Insurance Company | American Retirement Life Insurance Company |

John Hamill
Joseph A. Roselius
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606
T 312.368.4000
E john.hamill@dlapiper.com
E joseph.roselius@dlapiper.com

Chelsea Mutual
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, California 92101
T 619.699.2700
E chelsea.mutual@dlapiper.com

Carolyn A. Taggart
PORTER, WRIGHT, MORRIS AND
ARTHUR LLP
250 East Fifth Street, Suite 2200
Cincinnati, OH 45202
T 513.369.4231
E ctaggart@porterwright.com

_____          _____
Continental General Insurance Company      Great American Financial Resources, Inc.




                                           _____
                                           American Financial Group, Inc.




_____          _____
Sheldon Eisenberg                          James R. Matthews (0043979)
DRINKER BIDDLE AND REATH LLP               Brian P. Muething (0076315)
1800 Century Park East, Ste. 1500          KEATING MUETHING & KLEKAMP, PLL
Los Angeles, California 90067-1517         One E. 4th Street, Suite 1400
Telephone: (310) 203-4035                  Cincinnati, OH 45202
Sheldon.Eisenberg@dbr.com                  Phone: (513) 579-6400
                                           Fax: (513) 579-6457
Steven H. Brogan                           jmatthews@kmklaw.com
DRINKER BIDDLE AND REATH LLP               bmuething@kmklaw.com
One Logan Square, Suite 2000
Philadelphia, PA  19103-6996
Telephone: (215) 988-3380
Steven.Brogan@dbr.com

1

_____
Continental General Insurance Company

_____
Great American Financial Resources, Inc.
MARK F. MUETHING
President

_____
American Financial Group, Inc.
MARK A WEISS
VICE PRESIDENT

_____
Sheldon Eisenberg
DRINKER BIDDLE AND REATH LLP
1800 Century Park East, Ste. 1500
Los Angeles, California 90067-1517
Telephone: (310) 203-4035
Sheldon.Eisenberg@dbr.com

Steven H. Brogan
DRINKER BIDDLE AND REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA  19103-6996
Telephone: (215) 988-3380
Steven.Brogan@dbr.com

_____
James R. Matthews (0043979)
Brian P. Muething (0076315)
KEATING MUETHING & KLEKAMP, PLL
One E. 4th Street, Suite 1400
Cincinnati, OH 45202
Phone: (513) 579-6400
Fax: (513) 579-6457
jmatthews@kmklaw.com
bmuething@kmklaw.com

1