IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **JOHN FASTRICH and UNIVERSAL INVESTMENT SERVICES, INC. and REGINALD J. GOOD D/B/A REGINALD J. GOOD AGENCY,** | |
| **Plaintiffs,** | |
| **vs.** | **CASE NO. 1:17-cv-00615-MRB** |
| **CONTINENTAL GENERAL INSURANCE COMPANY, GREAT AMERICAN FINANCIAL RESOURCE, INC., AMERICAN FINANCIAL GROUP, INC., LOYAL AMERICAN LIFE INSURANCE COMPANY, and AMERICAN RETIREMENT LIFE INSURANCE COMPANY,** | **JUDGE MICHAEL R. BARRETT** |
| **Defendants.** | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**</u>

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ iii

I. INTRODUCTION .................................................................................................. 1

II. PROCEDURAL HISTORY AND TERMS OF SETTLEMENT ........................... 6

   A. The Notice Provisions in the Settlement Agreement Have Been Satisfied. ........................ 6

   B. Response from Settlement Class Members ..................................................... 8

III. THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED ..................... 8

   A. Applicable Legal Standard for Final Approval of Class Action Settlement   Pursuant to Fed. R. Civ. P. 23 .............................................................................. 8

   B. The Proposed Settlement Satisfies the Relevant Criterion for Final Approval Pursuant to Fed. R. Civ. P. 23. ....................................................................... 9

      1. The Notice Provisions Were Followed and Provided Adequate Notice to the Class That Satisfies Due Process. ..................................................................... 9

      2. The Proposed Settlement Resolves a Bona Fide Dispute. ........................... 10

      3. The Proposed Settlement Is Fair, Reasonable, And Adequate ..................... 11

         i. There Is No Risk of Fraud or Collusion in the Settlement. ..................... 12

         ii. Complexity, Expense and Likely Duration of Litigation Supports Approval of Settlement. ......................................................................... 13

         iii. The Amount of Discovery Engaged in by the Parties Supports Approval of Settlement. ......................................................................... 13

         iv. The Likelihood of Success on the Merits Weighs in Favor of Approval. ................. 14

         v. Opinions of Class Counsel Support Settlement Approval .......................... 16

         vi. The Settlement Class' Response Supports the Settlement. ...................... 17

         vii. Approving This Settlement Is in the Public Interest. .............................. 17

IV. THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED ........................... 18

   A. Applicable Legal Standard for Final Class Certification ..................................... 18

   B. Fed R. Civ. P. 23(a) Factors Are Satisfied ..................................................... 18

      1. The Settlement Class Is Sufficiently Numerous. ........................................ 18

      2. The Settlement Class Seeks Resolution of Common Questions. ................... 19

      3. The Claims of the Named Plaintiffs Are Typical of the Settlement Class .................... 20

4.    Class Counsel and Plaintiffs Meet the Adequacy Requirements. .................................. 21

C.    The Settlement Class Satisfies the Predominance and Superiority Requirements of Fed. R. Civ. P. 23(b)(3) ................................................................................................................. 22

V.    CONCLUSION ................................................................................................................. 23

## TABLE OF AUTHORITIES

**Cases**

*Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 105 F.R.D. (S.D. Ohio 1985)................. 19

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007) ............................................................ 21

*Bovee v. Coopers & Lybrand,* 216 F.R.D. (S.D. Ohio 2003) ........................................................ 20

*Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 U.S. Dist. LEXIS 98763, (N.D. Ohio

    Sept. 1, 2011) ........................................................................................................................ 13

*Daffin v. Ford Motor Co.*, 458 F.3d (6th Cir. 2006)...................................................................... 19

*Doe v. Déjà Vu Consulting, Inc.*, 2019 U.S. App. LEXIS 16562, *10, 2019 FED App. 0113P (6th

    Cir.) ............................................................................................................................. 8, 9, 14

*Dukes*, 131 S. Ct............................................................................................................................. 19

*Gascho v. Global Fitness Holdings, LLC*, 822 F.3d (6th Cir. 2016)........................................... 8, 9

*Gascho*, 2014 U.S. Dist. LEXIS 46846 ........................................................................................ 19

*Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147 (1982)............................................................ 20

*Gentrup,* 2011 U.S. Dist. LEXIS 67887 ........................................................................................ 11

*Glazer*, 722 F.3d ...................................................................................................................... 18, 19

*Glazer*, 822 F.3d ............................................................................................................................ 18

*Granada Investments, Inc. v. DWG Corp.*, 962 F.2d (6th Cir. 1992).......................................... 16

*Hainey v. Parrott,* 617 F. Supp. 2d (S.D. Ohio 2007) ................................................................. 17

*Heibel v. United States Bank Nat'l Ass'n,* No. 2:11-cv-00593, 2014 U.S. Dist. LEXIS 193333, at

    *3-4 (S.D. Ohio May 21, 2014) ............................................................................................ 10

*Higgs v. Warranty Group*, No. 2:02-CV-1092, 2009 U.S. Dist. LEXIS 8408, (S.D. Ohio Feb. 5,

    2009)................................................................................................................................ 12, 17

*In re Am. Med.*, 75 F.3d .............................................................................................. 20

*In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 U.S. Dist. LEXIS 23482,

    (N.D. Ohio Feb. 26, 2015) ...................................................................................... 12

*In re: Gen. Tire & Rubber Co. Sec. Litig.,* 726 F.2d (6th Cir. 1984) ........................... 15

*Kritzer,* 2012 U.S. Dist. LEXIS 74994 ............................................................... 11, 16

*Lonardo v. Travelers Indemn. Co.*, 706 F. Supp. 2d (N.D. Ohio 2010) ...................... 18

*Mees v. Skreened, Ltd.*, No. 14-cv-142, 2016 U.S. Dist. LEXIS 1242, (S.D. Ohio Jan. 6, 2016)

    (Kemp, J.) .................................................................................. 9, 12, 13, 17

*Moore v. Aerotek, Inc.*, No. 2:15-cv-2701, 2017 U.S. Dist. LEXIS 102621, (S.D. Ohio June 30,

    2017).......................................................................................... 13, 14, 16, 18

*Moulton v. U.S. Steel Corp.*, 581 F.3d (6th Cir. 2009) ............................................... 13

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. (1950)..................................... 9

*Oppenlander v. Standard Oil Co.*, 64 F.R.D. (D. Colo. 1974) ..................................... 16

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985). 23

*Putnam v. Davies, 16*9 F.R.D. 89, 93 (S.D. Ohio 1996).............................................. 20

*Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435 (S.D. Ohio 2009).......................... 20

*Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d (6th Cir. 2013)........ 18

*Smith v. Ohio Dep't of Rehab. & Correction*, No. 2:08-CV-15, 2012 U.S. Dist. LEXIS 1440254,

    (S.D. Ohio Apr. 26, 2012)............................................................... 16, 20, 21

*Stinson v. Delta Mgmt. Assocs.*, 302 F.R.D. (S.D. Ohio 2014) .................................... 14

*Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 U.S. Dist. LEXIS 94450, (S.D. Ohio July 11,

    2014)........................................................................................................... 17

*UAW v. GMC*, 497 F.3d (6th Cir. 2007) ........................................................ 8, 9, 12, 15

iv

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983)............................................................ 9, 13, 17

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d (6th Cir. 2012) ...................................................... 18

**Rules**

Fed. R. Civ. P. 23(a) ................................................................................................... 20, 23

Fed. R. Civ. P. 23(b) ......................................................................................................... 24

Fed. R. Civ. P. 23(c) ........................................................................................................... 9

Fed. R. Civ. P. 23(e) ........................................................................................................... 7

I.      **INTRODUCTION**

This class action against Defendants Continental General Insurance Company ("CGI"), Great American Financial Resource, Inc. ("GAFRI"), American Financial Group, Inc., Loyal American Life Insurance Company ("LALIC"), and American Retirement Life Insurance Company ("ARLIC") (collectively, "Defendants") has been settled subject to Court final approval and Plaintiffs John Fastrich, Universal Investment Services, Inc., and Reginald J. Good ("Plaintiffs") respectfully submit this memorandum of law in support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement.[1] The Court granted preliminary approval of this Settlement on April 2, 2019 (ECF No. 38), and set a Fairness Hearing for September 17, 2019 (ECF No. 46). Now, after the Court-approved Notice has been sent to the Settlement Class Members, final approval of this Settlement is appropriate.[2]

This class action (the "Action") was originally initiated in this Court by Plaintiffs John Fastrich and Universal Investment Services Inc. on behalf of themselves and "[a]ll current and former regional managers, general agents, associate general agents, and agents of CGI . . . who have lost commissions, renewals, and/or overrides as a result of Defendants' wrongful conduct . . . ," by filing the initial complaint. ECF No. 1.

The initial complaint alleged that Plaintiffs contracted with CGI to sell CGI's insurance products such as Medicare supplements, long-term care, senior life policies, and annuities to various customers. In exchange, Plaintiffs were to be compensated in the form of commissions, renewals, and overrides (together, "Commissions") on insurance products they sold. The payment

---

[1] A copy of the Settlement Agreement is attached as Attachment #2 to the Plaintiffs' Motion for Preliminary Approval of Settlement Agreement.  ECF No. 37-2.
[2] To the extent not otherwise defined herein, capitalized terms shall have the same meaning as in the Settlement Agreement.

structure of the Commissions centered on a contracting hierarchy. Regional managers were at the top of the payment hierarchy, then general managers, general agents, associate general agents, and agents. Once an agent sells an insurance product, that agent becomes the agent of record and is entitled to commissions and/or renewals resulting from the sale. Overrides are the difference between the compensation paid to individuals in the hierarchy. Regional managers and general agents are entitled to such overrides from the agents in their hierarchy. ECF No. 1. On February 14, 2019, Plaintiffs filed an Amended Complaint joining Plaintiff Reginald Good as well as additional Defendants to this Action (the "FAC"). ECF No. 26.

Plaintiffs claimed that they and other Class Members were harmed when Defendants obtained state "approval for various new products" and thereafter "began contacting existing policyholders and replacing the in-force policies with the new products." FAC ¶ 29. Plaintiffs contend that Defendants "instructed policyholders to switch policies when receiving rate increase letters" and that when existing policies were replaced with new policies, the existing producers of record were terminated and replaced with new producers of record, some of whom were in-house producers. *Id*. Plaintiffs claim that they and other similarly situated former producers lost initial, renewal, and override commissions on policies that were replaced. *Id*. ¶ 32. Plaintiffs allege that the policy replacements caused many producers to become "non-vested" pursuant to their agreements with Defendants. *Id*. ¶ 34. Plaintiffs also allege that contracts with Defendants entitled them to receive commissions on premium increases for long-term care insurance policies issued prior to January 2000. *Id*. ¶ 39. Plaintiffs further contend that Defendants breached their contracts with Plaintiffs and other Class Members when they did not remit non-vested commissions up the hierarchy to the next agent, allegedly retaining commissions from non-vested agents, and did not

pay commissions on premium increases. *Id*. ¶¶ 41-42. Defendants expressly deny Plaintiffs' allegations.

After the initial pleadings were filed the parties engaged in informal discovery, exchanged considerable document production for settlement purposes, participated in extensive arm's-length negotiations, and participated in a mediation before the Honorable Richard Neville, beginning on January 26, 2018, in Chicago, Illinois. The parties conducted damages calculations and exchanged various settlement demands, offers, counter-demands, and further counter-offers. Plaintiffs' counsels reviewed a massive amount of records made available to them by the Class Representatives – whole boxes of records going back nearly 20 years – including insurance policies, agent agreements, and commission payments. With additional assistance from Judge Neville over the next several weeks, the parties were later able to negotiate a class settlement to resolve this matter. The terms of the parties' settlement are set forth in the Settlement Agreement (the "Settlement Agreement") submitted to the Court with the Motion for Preliminary Approval, ECF No. 37-2.  Plaintiffs' Counsel believes that the negotiated Settlement Agreement provides an excellent settlement for Plaintiffs and the Settlement Class, with respect to their claims for unpaid commissions on the sale of various insurance products.

The Settlement Agreement provides that Defendants will pay a Class Payment of $1,250,000.00 to settle the class claims of all Settlement Class Members. In view of the hurdles posed by formidable defenses to Plaintiffs' claims, as more fully detailed below, this is a remarkable result of 31.25% of the total damages as calculated by the Class Counsels, of approximately $4 million in past commissions and non-vested agent payments. The Class Payment includes amounts to cover a proposed $7,500.00 total service award to Plaintiffs John Fastrich and Universal Investment Services, Inc., and proposed $7,500.00 service award to Plaintiff Reginald

3

J. Good, for their respective efforts in bringing and prosecuting this matter and reimbursement of their respective expenses (the "Service Awards"). After the payment of the Service Awards, all Settling Class Members will receive their pro-rata share of the Class Payment, net of attorney's fees and expense, with no portion of that amount ever reverting to Defendants.

Concomitantly with this Motion, Lead Counsel have filed a separate application seeking an award of attorney's fees, reimbursement of litigation expenses, and claims administration costs to be paid from the settlement fund in the sum of $450,000, to be allocated as follows: attorney's fees: $353,983.19 (or 28.3% of the gross recovery of $1,250,000); reimbursement of expenses: $81,016.81; and Service Awards for the class representatives as outlined immediately above: $15,000.00 total (the "Application"). As more fully detailed in the Application and below, Lead Counsel seeks fees and expenses through May 26, 2019, and no fees and expenses associated with the Second Notice, described below, were included in the Application.

As per the Court's Order granting preliminary approval, Class Counsel, through the Claims Administrator, printed and mailed by first class mail the Court-approved Notice to the 4,446 potential Settlement Class Members. Evans Decl.[3] ¶ 4. The Notice advised each Settlement Class Member that the parties had reached a Settlement, subject to Court approval, pursuant to which they would receive an amount of money from the $1,250,000.00 Allocation Fund, to be distributed on a pro rata basis to Class Members who submit valid Claim Forms. Notice of Proposed Class Action Settlement, ECF No. 45-2 at p.6. The Court ordered a second Long Form Notice and Claim Form to be sent to class members to provide information that had been inadvertently left out of the

---

[3] This abbreviation is used for the Declaration of Sarah Evans Concerning: (A) The Mailing of the Memorandum Concerning the Sending of Second Long Form Notice the Long Form Notice of Proposed Class Action Settlement and the Claim Form; (B) Exclusion Received; and (C) Objections Submitted. A copy of the declaration is attached to this memorandum.

4

first notice (the "Prior Notice"). ECF No. 46. The "Notice" referenced throughout this brief means the second, operative notice.

The Notice further advised each Settlement Class Member that the Class Counsel will apply to the Court for an award of attorneys' fees and reimbursement of litigation expenses and claims administration costs in an amount not to exceed $450,000 of the common fund. ECF No. 45-2 at pp.7-8. Thus, the net portion of the Allocation Fund payable to the class members totals $800,000.

At the direction of Class Counsel, the Claims Administrator also set up a website to provide information regarding the settlement, at www.strategicclaims.net/continental, updated with the second Long Form Notice and Claim Form on July 23, 2019. The website contained downloadable copies of the Long Form Notice and Claim Form and also a link to the online claims filing system. Evans Decl. ¶ 8.

The response to the Settlement from the Settlement Class Members has been positive. ***As of August 27, 2019, Class Counsel has received zero objections and only ten unique requests for exclusion (for a total of 11 requests, including one duplicate), and 431 Settlement Class Members submitted claims.*** Evans Decl. ¶¶ 9-11.[4]  One of the exclusions received indicated that the recipient believed he was not owed unpaid commissions and did not want his name associated with the Settlement. The remaining 10 exclusion requests did not list a reason for wanting to be excluded.  *Id.* ¶ 9.[5]

---

[4] All claims were to be postmarked by August 24, 2019.
[5] The deadline for exclusion requests and objections to be postmarked was August 19, 2019. See *infra*, p.6.

The proposed Settlement Agreement satisfies all the criteria for final approval under federal and state laws and is fair, reasonable, and adequate. Accordingly, Plaintiffs respectfully submit that the Court issue an Order:

(1)     Granting final approval of the proposed Settlement Agreement;

(2)     Granting final approval of the Settlement Class pursuant to Fed. R. Civ. P. 23;

(3)     Finally approving Plaintiffs John Fastrich, Universal Investment Services, Inc., and Reginald J. Good as Class Representatives;

(4)     Approving Shindler, Anderson, Goplerud & Weese, P.C., RoscaLaw LLC, Peiffer Wolf Carr & Kane, APLC, and Whitfield & Eddy P.L.C. as Class Counsel for the Settlement Class; and

(5)     Dismissing this class and collective action with prejudice.

Defendants do not oppose this Motion. Plaintiffs have submitted a proposed final approval order for the Court's consideration.

## II.     PROCEDURAL HISTORY AND TERMS OF SETTLEMENT

Plaintiffs incorporate by reference the Procedural History and Terms of the Settlement Agreement Sections, as set forth in the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement Agreement. ECF No. 37-1 at pp. 3-7.

### A.     The Notice Provisions in the Settlement Agreement Have Been Satisfied.

Since the Court granted preliminary approval of the Settlement Agreement on April 2, 2019, the parties have fully complied with the Notice provisions detailed in the Settlement Agreement. *See* Settlement Agreement § II(D), pp. 16-17.

Pursuant to the terms of the Settlement Agreement, Defendants sent to Class Counsel an updated electronic database containing the mailing addresses for the Settlement Class Members,

(the "Class List"). *Id. § II(D)(4), p.16*. The Class List contained data for 4,446 Settlement Class Members. Evans Decl. ¶¶ 4-5. Pursuant to the Court Order granting preliminary approval (ECF #38) and the Order Granting Unopposed Motion [for] Approval of Documents to Be Sent to Class Members and New Deadlines Pertaining to the Class Action Settlement and to Set Date for Final Fairness Hearing (ECF #46), Class Counsel through the Claims Administrator mailed the Court-approved Notice to the 4,446 Settlement Class Members contained in the Class List via First Class mail direct. *Id.* ¶ 4. At the direction of Class Counsel, on July 23, 2019 the Claims Administrator also updated website launched to provide information regarding the settlement, at www.strategicclaims.net/continental, by adding the second Long Form Notice and Claim Form and updated deadlines. *Id.* ¶ 8. The website contained the important dates for the case such as claims filing deadline, exclusion deadline, objection deadline, and Settlement Hearing date; and downloadable copies of the Notice and Claim Form and the Settlement Agreement, and also a link to the online claims filing system. *Id.* ¶ 8.

The Notice advised Settlement Class Members that they could mail a written objection to the settlement or a written request for exclusion by August 19, 2019. Evans Decl. ¶ 9. Settlement Class Members were able to submit their objections and written exclusions via regular mail. *Id.*

Notices from 519 Settlement Class Members were returned by the post office as undeliverable; 33 of these returned Notices contained a forwarding address. Evans Decl. ¶ 7. The Claims Administrator re-mailed the 33 returned Notices with a forwarding address to the forwarding address provided via U.S. First Class Mail. *Id.* ¶ 7. For the remaining 486 returned Notices, the Claims Administrator searched Experian's Address Search system for updated mailing addresses. *Id.* ¶ 7. The Claims Administrator was able to locate 132 Settlement Class Members and re-mailed the returned Notices to them. As of August 13, 2019, the Claims

Administrator deemed the remaining 354 Notices – out of 4,446 total notices sent –undeliverable via mail and email. *Id.* ¶ 7. Thus, Notices were ultimately received by 92% of the Settlement Class Members.

### B.     Response from Settlement Class Members

The Claims Administrator received 431 claims from Class Members, has not received any objections, and has only received ten unique requests for exclusion from the Settlement. *Id*. ¶¶ 9-11. As indicated above, one of the individuals requesting exclusion stated that he believed he was not owed unpaid commissions and did not want his name associated with the Settlement, while the remaining 10 exclusion requests did not list a reason for wanting to be excluded.  *Id.* ¶ 9.

## III.    <u>THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED</u>

Plaintiffs respectfully request that the Court enter the accompanying proposed order finally approving the class action settlement.

### A.     Applicable Legal Standard for Final Approval of Class Action Settlement Pursuant to Fed. R. Civ. P. 23

The Sixth Circuit has explained that, "[b]efore approving a settlement, a district court must conclude that it is 'fair, reasonable, and adequate.'" *UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007) (quoting Fed. R. Civ. P. 23(e)(1)(A)(C)); *see also Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 276 (6th Cir. 2016) ("[A] court may approve a settlement upon holding a fairness hearing and concluding that it is 'fair, reasonable, and adequate.'"); *Doe v. Déjà Vu Consulting, Inc.*, 2019 U.S. App. LEXIS 16562, *10, 2019 FED App. 0113P (6th Cir.). The Sixth Circuit has established "[s]everal factors to guide the court's inquiry . . . (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the

opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Gascho,* 822 F.3d at 276-77; *Déjà Vu Consulting, Inc.*, 2019 U.S. App. LEXIS 16562 at *10; *Mees v. Skreened, Ltd*., No. 14-cv-142, 2016 U.S. Dist. LEXIS 1242, at *5-6 (S.D. Ohio Jan. 6, 2016) (Kemp, J.) (both citing *UAW*, 497 F.3d at 631).

While these factors are helpful in guiding the analysis, the "fairness of each settlement turns in large part on the bona fides of the parties' legal dispute," that is, whether there are real issues and risks in the case that would lead each party to opt toward settlement. *UAW*, 497 F.3d at 631; *see also Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983).

**B.      The Proposed Settlement Satisfies the Relevant Criterion for Final Approval Pursuant to Fed. R. Civ. P. 23.**

**1.   The Notice Provisions Were Followed and Provided Adequate Notice to the Class That Satisfies Due Process.**

The U.S. Supreme Court has held that notice of a class action settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). This Court held that Notice is considered "best notice practicable" and "satisfie[s] constitutional due process concerns" when it is mailed to the last-known address of each individual class member, when follow up efforts are made to resend notices returned as undeliverable, and when the notice adequately describes the relevant parts of the proposed settlement, and the requested service awards and fee awards. *E.g., Heibel v. United States Bank Nat'l Ass'n,* No. 2:11-cv-00593, 2014 U.S. Dist. LEXIS 193333, at *3-4 (S.D. Ohio May 21, 2014) (Sargus, J.).

Here, the Court-approved Notice and manner of distribution negotiated and agreed upon by the parties was "the best notice practicable," as required under Fed. R. Civ. P. 23(c)(2)(B). As

described above, the Notice provisions of the Settlement Agreement, as per the Court's July 19, 2019 Order (Docket # 46), were followed by the parties. Evans Decl. ¶ 6. The Notices were mailed to each of the individual Settlement Class Members. *Id.* ¶¶ 4-6. Significant follow-up efforts were undertaken to resend the Notices to those individuals whose original Notices were returned as undeliverable. *Id.* ¶¶ 5,7. Ultimately, Notices were received by 92% of the Settlement Class Members. Moreover, the Notice adequately described the details of the Settlement, the requested Service Awards for the Plaintiffs as well as the requested fee award for Class Counsel's attorneys' fees and expenses. Such Notice was the "best notice practicable" and satisfies constitutional due process. *See Heibel*, 2014 U.S. Dist. LEXIS 193333, at *3-4 (Sargus, J.).

**2.  The Proposed Settlement Resolves a Bona Fide Dispute.**

The Settlement resolves *bona fide* disputes between the parties under the Ohio and Nebraska state laws. Plaintiffs maintained that they and the Settlement Class Members were owed compensation as a result of Defendants' failure to pay appropriate commissions, renewals, or overrides on insurance products sold by licensed agents, that they were entitled to certain contractual damages, equitable damages, and statutory damages under Nebraska state laws for Defendants' failure to promptly pay them such commissions, renewals, or overrides.

Prior to reaching a settlement, the parties engaged in contested litigation in two fora, extensive informal discovery, and lengthy arm's-length negotiations. Specifically, and as more fully set forth in the Procedural History section of the Brief in Support of Preliminary Approval, ECF No. 37-1 pp.4-5, incorporated herein, the parties reached their proposed Settlement only after (1) pre-Answer motion practice in a related action in United States District Court for the District of Nebraska (the "Nebraska Action"); (2) the exchange of substantial documents and records; (3) exchanges of damages calculations; (4) assessment of strengths and weaknesses of each of the

claims; and (5) a lengthy in-person mediation session and weeks of subsequent negotiations with the assistance from the mediator. Defendants vigorously defended this action and indeed were successful in securing a partial dismissal of the Nebraska Action, as more fully set forth in the Procedural History section of the Brief in Support of Preliminary Approval, ECF No. 37-1 p.4. Accordingly, the risks and costs of continued litigation were significant. *Kritzer,* 2012 U.S. Dist. LEXIS 74994, at *17 (settlement resolves a bona fide dispute when parties disagree about the payment of wages); *Gentrup,* 2011 U.S. Dist. LEXIS 67887, at *6-7 (settlement is a reasonable compromise over bona fide disputed wage issues).

### 3. The Proposed Settlement Is Fair, Reasonable, And Adequate

Plaintiffs believe that the Settlement is an excellent result for the members of the Settlement Class. Assuming the Court approves the proposed attorney's fees, expenses, and Service Awards, the 431 members who submitted claims will be entitled to receive an average recovery of approximately $1,856 of the total $800,000 portion of the settlement net of attorney's fees, expenses, and service awards. *There will be no reversion of funds to Defendants*. *See* Settlement Agreement § II(H) ¶ 26, ECF No. 37-2 pp. 23-24.

Critically, while 92% of the Settlement Class Members received Notice, no class members attempted to file objections to the Settlement. "The lack of opposition by a well-noticed class strongly supports the fairness, reasonableness and adequacy of the Stipulation and Class Counsel's Application for Fees." *Higgs v. Warranty Group*, No. 2:02-CV-1092, 2009 U.S. Dist. LEXIS 8408, at *14 (S.D. Ohio Feb. 5, 2009) (Sargus, J.) (Court found it significant that after 90% of Class Members received Notice, no objections were filed).

Given the significant monetary settlement that was negotiated, continuing the litigation of this case and exposing the case to those risks is not warranted. As more fully set forth below, the

*UAW* factors (*i.e.*, (i) the risk of fraud or collusion; (ii) the complexity, expense and likely duration of the litigation; (iii) the amount of discovery engaged in by the parties; (iv) the likelihood of success on the merits; (v) the opinions of class counsel and class representatives; (vi) the reaction of absent class members; and (vii) the public interest) strongly support final approval of this Settlement. *UAW*, 497 F.3d at 631.

###### i.  There Is No Risk of Fraud or Collusion in the Settlement.

"Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 U.S. Dist. LEXIS 23482, at *13 (N.D. Ohio Feb. 26, 2015); *Mees*, 2016 U.S. Dist. LEXIS 1242, at *6 (Kemp, J.) ("Absent evidence to the contrary, courts presume that a class settlement is the result of arm's length negotiations and is not the product of fraud or collusion.").

In this case, the Settlement was reached only after (1) significant litigation in the form of pre-Answer motion practice in a related action in United States District Court for the District of Nebraska (the "Nebraska Action"), which resulted in a partial dismissal of Plaintiffs' claims; (2) the exchange of substantial documents and records; (3) exchanges of damages calculations; (4) assessment of strengths and weaknesses of each of the claims; and (5) a lengthy in-person mediation session and many weeks of subsequent negotiations with the assistance from the mediator. Defendants' success in securing the partial dismissal of Plaintiffs' claims best illustrates the lack of any fraud or collusion in the settlement.

Thus, there is not even a hint of collusion between the parties or their counsel, and certainly no evidence of such behavior. Moreover, no one has objected to the Settlement or otherwise "made the case that the agreement is a product of collusion." *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 351 (6th Cir. 2009) (citing *Williams*, 720 F.2d at 921); *Mees*, 2016 U.S. Dist. LEXIS 1242, at *6-

7 (Kemp, J.) (finding no risk of fraud or collusion where counsel represented that the agreement was the "result of arms' length good faith negotiations which took place over the course of many months" and no one made an argument that fraud or collusion exists). Based on the foregoing, consideration of this factor supports approval of the Settlement.

### ii. Complexity, Expense and Likely Duration of Litigation Supports Approval of Settlement.

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Moore v. Aerotek, Inc.*, No. 2:15-cv-2701, 2017 U.S. Dist. LEXIS 102621, at *10 (S.D. Ohio June 30, 2017) (Kemp, J.). This case is no different. In the absence of the Settlement, this litigation would likely continue over the course of several years, requiring depositions in numerous states, class certification briefing, and other motion practice, including post-trial motions and possibly appeals, resulting in litigation that is both lengthy and costly. Moreover, given the *bona fide* disputes in this case, there would be no guarantee that Plaintiffs would prevail at trial or obtain class certification in this case. Indeed, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 U.S. Dist. LEXIS 98763, at *43 (N.D. Ohio Sept. 1, 2011) (citations and internal quotations omitted). The Settlement obviates the need to litigate these issues and the concomitant expense. This factor therefore weighs in favor of approval of the Settlement.

### iii. The Amount of Discovery Engaged in by the Parties Supports Approval of Settlement.

The parties exchanged extensive informal discovery, including policy information concerning several types of insurance, insurance policy commission rate information, insurance

policy premium data and data concerning non-vested accounts. Furthermore, the parties confirmed there was no written or unwritten company policy to replace agents or record with in-house agents.

Based on the information exchanged, the parties were able to fully explore the strengths, weaknesses and potential value of their respective claims and defenses under the Ohio and Nebraska state laws. Class Counsel reviewed a massive amount of insurance policies, agent contracts, and commission payment-related records – many boxes of documents, covering nearly 20 years of records – that the class representatives made available to them. Further, Class Counsel extensively investigated the applicable law as applied to the relevant facts discovered in this action, and the potential defenses thereto. Defendants produced critical information about their policy commissions that helped to inform the parties' decision to settle. Once these documents were analyzed by the parties, additional discovery would not likely have changed the outcome of the Settlement. There has been sufficient investigation and discovery conducted in this matter to allow Class Counsel and the Court to act intelligently concerning the settlement of the claims. *See Stinson v. Delta Mgmt. Assocs.*, 302 F.R.D. 160, 164 (S.D. Ohio 2014); *Moore*, 2017 U.S. Dist. LEXIS 102621, at *12 (Kemp, J.). Consideration of this factor likewise supports final approval of the Settlement.

### iv. The Likelihood of Success on the Merits Weighs in Favor of Approval.

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *Déjà Vu Consulting, Inc.*, 2019 U.S. App. LEXIS 16562 at *10. This factor seeks to measure whether a settlement is reasonable in light of known or perceived risks. *See, e.g., UAW*, 497 F.3d at 631 (Although examination of this factor does not require the Court to resolve the outstanding legal or factual issues on the merits, the Court cannot adequately assess the fairness of the proposed settlement without "weighing the plaintiff's likelihood of

success on the merits against the amount and form of the relief offered in the settlement.")
(citations and internal quotations omitted). "The likelihood of success, in turn, provides a gauge
from which the benefits of the settlement must be measured." *In re: Gen. Tire & Rubber Co. Sec.
Litig.,* 726 F.2d 1075, 1086 (6th Cir. 1984).

As discussed above, absent settlement, the parties would have engaged in additional
discovery (including written discovery and depositions), motion practice (class certification,
dispositive motions on merits and damages issues), and possibly appeals. The parties had bona
fide disputes and vigorously supported their respective positions, as illustrated by Defendants'
success in the related Nebraska Action in securing the dismissal of some of Plaintiffs' claims.
While Plaintiffs believe they will be meritorious in their claims, they recognized the inherent risk
of litigation and trial. Critically, Plaintiffs' claims were subject to strong "statute of limitations"
arguments given that key alleged conduct by Defendants occurred nearly 20 years ago, as well as
substantial risks that the class may not be certified, given the different versions of agent contracts
at issue over the years that the alleged conduct occurred; the many different commission rates at
issue; and the many different insurance policy products. While Plaintiffs believe that ultimately
they would have prevailed on the statute of limitations issues and class certification, the outcome
was far from certain.

In view of the serious risk posed to a potential recovery by such formidable defenses and
hurdles, the $1.25 million settlement is a remarkable result that secures 31.25% of the total
damages as calculated by the Class Counsels, of approximately $4 million in past commissions
and non-vested agent payments.

The Settlement provides a remarkable and immediate, meaningful recovery to Plaintiffs
and Eligible Class Members and eliminates the risks that the parties would otherwise bear if this

litigation were to continue on for years. The possibility that the class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992). Where a proposed settlement provides for relief now, not perhaps some years down the road, it is proper for the parties "to take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974).

Without negating the strength of Plaintiffs' claims and legal arguments, for foregoing considerations demonstrate the ultimate success in the case was by no means assured. As such, analysis of this factor also supports final approval of the Settlement.

### v. Opinions of Class Counsel Support Settlement Approval.

This Court "gives weight to the belief of experienced counsel that a settlement is in the best interests of the class." *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *23; *see, e.g., Moore*, 2017 U.S. Dist. LEXIS 102621, at *16 (Kemp, J.) (counsel's opinion that the proposed settlement is fair, reasonable, and adequate "is entitled to considerable weight"); *Smith v. Ohio Dep't of Rehab. & Correction*, No. 2:08-CV-15, 2012 U.S. Dist. LEXIS 58634, at *61-63 (S.D. Ohio Apr. 26, 2012) (courts will give deference to class counsel's determination to settle a case).

Here, Class Counsel are highly experienced class action litigators. Moreover, these experienced attorneys have engaged in considerable discovery and litigation in this matter and have extensively explored and evaluated the strengths of the case. After such analysis and evaluation, these experienced class action attorneys believe that this case is appropriate for settlement, that the proposed Settlement is fair, reasonable, adequate, and is in the best interest of the class. *See, e.g., Williams*, 720 F.2d at 922-23 ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs" and deference

"should correspond to the amount of discovery completed and the character of the evidence uncovered."). Accordingly, this factor also supports final approval of the Settlement.

### vi.    The Settlement Class' Response Supports the Settlement.

The Settlement Class Members' collective response to the Settlement overwhelmingly supports final approval. With the deadline for making objections and opting out of the Settlement having passed, it is highly significant that there have been zero objections and only ten unique requests for exclusion to the proposed Settlement. *See* Evans Decl. ¶¶ 9-10; Evans Decl. Exh. C. This overwhelmingly positive response from the Settlement Class demonstrates the fairness and adequacy of the Settlement's terms. *E.g., Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 U.S. Dist. LEXIS 94450, at *11 (S.D. Ohio July 11, 2014) (holding overwhelmingly positive reaction to the settlement supports approval).  Given the Court's preliminary approval and the absence of any objections by Settlement Class Members, final approval of the settlement is warranted. *Higgs,* 2009 U.S. Dist. LEXIS 8408, at *14 (Sargus, J.) (lack of opposition "strongly supports" the fairness, reasonableness and adequacy of a settlement); *Mees*, 2016 U.S. Dist. LEXIS 1242, at *12 (Kemp, J.) (having no objectors to the fairness of a class settlement weighs in favor of its final approval).

### vii.    Approving This Settlement Is in the Public Interest.

"Public policy generally favors settlement of class action lawsuits." *Swigart*, 2014 U.S. Dist. LEXIS 94450, at *11 (citing *Hainey v. Parrott,* 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007)). There is an equally strong public policy in favor of class actions, which vindicate the rights that are legitimate and meaningful, but are nonetheless uneconomical to prosecute individually. *See, e.g., Lonardo v. Travelers Indemn. Co.*, 706 F. Supp. 2d 766, 782 (N.D. Ohio 2010). Here, the Settlement provides significant and immediate relief for Eligible Class Members and avoid

prolonged litigation, "resulting in the conservation of both the parties' resources and the Court's resources." *Moore*, 2017 U.S. Dist. LEXIS 102621, at *17 (Kemp, J.). This factor also supports granting final approval of the Settlement.

## IV.    THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

### A.    Applicable Legal Standard for Final Class Certification

A class action is an ideal vehicle for resolving those cases in which: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 683 (6th Cir. 2013) (quoting Fed R. Civ. P. 23(a)). "The proposed class must also meet at least one of the three requirements listed in Rule 23(b)." *Schumacher*, 711 F.3d at 683; *Glazer*, 822 F.3d at 850 (citing *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012)). In this instance, certification is appropriate for settlement purposes under Rule 23(b)(3), because "the questions of law or fact common to class members predominate over any questions affecting only individual members" and that the class action is "superior to other available methods" to adjudicate the controversy fairly and efficiently." *Glazer*, 722 F.3d at 850-51.

When certifying a class for settlement purposes, district courts are afforded broad discretion. *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996). In this instance, and in this context, the requirements for class certification are readily met.

### B.    Fed R. Civ. P. 23(a) Factors Are Satisfied.

#### 1.    The Settlement Class Is Sufficiently Numerous.

To meet the numerosity requirement of Fed. R. Civ. P. 23(a)(1), the class size only need be large enough that it makes joinder impracticable. Fed. R. Civ. P. 23(a)(1). While the law does not establish a "strict numerical test," whenever "substantial numbers" of people are affected, numerosity requirement is satisfied. *Glazer*, 722 F.3d at 852 (citing *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)). The Settlement Class meets the numerosity requirement since 431 Class Members have submitted claims. Evans Decl. ¶ 11. Indeed, the Settlement Class is sufficiently large that joinder of all class members would be impracticable. *See, e.g., Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 105 F.R.D. 506, 508 (S.D. Ohio 1985) (23 members was enough to meet the numerosity).

### 2.    The Settlement Class Seeks Resolution of Common Questions.

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action raise "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The class members' claims must depend upon a common contention that is capable of class-wide resolution. *Dukes*, 131 S. Ct. at 2562. The commonality requirement of Fed. R. Civ. P. 23(a)(2) is satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. *See Gascho*, 2014 U.S. Dist. LEXIS 46846, at *24-27; *see also Dukes*, 131 S. Ct. at 2556 ("We quite agree that for purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do[.]") (internal quotations and citations omitted; alterations in original). Additionally, "the commonality requirement will be satisfied as long as the members of the class have allegedly been affected by a general policy of the Defendant and the general policy is the focus of the litigation." *Bovee v. Coopers & Lybrand,* 216 F.R.D. 596, 608 (S.D. Ohio 2003) (Sargus, J.) (quoting *Putnam v. Davies, 16*9 F.R.D. 89, 93 (S.D. Ohio 1996)); *see also Glazer*, 722 F.3d at 853 (commonality standard turns on whether there are unifying allegations regarding a defendant's common conduct toward the class).

19

Here, Plaintiffs' and the Settlement Class Members' claims arise from Defendants' common commission payment policies. The alleged common issues include, for example: (1) whether the Settlement Class Members were entitled to commission payments on insurance products sold; (2) whether the policy of failing to pay such commissions breached the contract between the Settlement Class Members and the Defendants. These sample common questions of law and fact, which Plaintiffs contend apply uniformly to all members of the Settlement Class, are sufficient to satisfy the commonality requirement. *Id.*

### 3. The Claims of the Named Plaintiffs Are Typical of the Settlement Class.

Since Plaintiffs' claims "arise [ ] from the same event or practice or course of conduct that gives rise to the claims of other class members," namely, Defendants' commission payment policies, Plaintiffs' claims are typical of the Settlement Class. *In re Am. Med.*, 75 F.3d at 1082; *Smith v. Ohio Dep't of Rehab. & Correction*, No. 2:08-CV-15, 2012 U.S. Dist. LEXIS 1440254, at *14 (S.D. Ohio Apr. 26, 2012). The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied for purposes of preliminarily approving the Settlement when, as here, the class representatives possess the same interest and suffered the same injury as the absent class members. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 156 (1982); *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 445 (S.D. Ohio 2009). "A 'typical' claim 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and [must be] based on the same legal theory." *Smith v. Ohio Dep't of Rehab. & Correction*, No. 2:08-CV-15, 2012 U.S. Dist. LEXIS 1440254, at *14 (S.D. Ohio Apr. 26, 2012) (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)). However, representatives and class members' claims "need not always involve the same facts or law, provided there is a common element of fact or law." *Id.* (internal quotation marks and citations omitted).

Plaintiffs' claims for commission payments on various insurance products are typical of the claims of the Settlement Class. The Plaintiffs, between their respective insurance practices, have sold the types of insurance policies and products at issue in this case, and as stated in their operative pleadings believe they have been victimized by Defendants through the entire breadth of conduct alleged in this case, specifically through Defendants' (1) failure to pay them commissions on premiums paid by policyholders to whom they sold long-term care insurance policies and other products, due to premium rate increases on such long-term care insurance policies and products; (2) failure to properly calculate and/or pay them commissions in accordance with the vesting provisions of their agreements with Defendants; and (3) replacement of Plaintiffs as the agents of record in connection with some of their sales of insurance policy or product to policyholders. Thus, Plaintiffs' claims are typical of those of the Settlement Class.

4.        **Class Counsel and Plaintiffs Meet the Adequacy Requirements.**

To meet the adequacy requirement of Fed. R. Civ. P. 23(a)(4), the named plaintiffs must show: 1) that they have common interests with unnamed class members and 2) that they will vigorously prosecute the interests of the class through qualified counsel. *Ohio Dep't of Rehab. & Correction*, 2012 U.S. Dist. LEXIS 1440254, at *16.

The adequacy of representation requirement is met here because Plaintiffs have the same interests as the Settlement Class Members: the desire to recover unpaid insurance commissions they believe they were owed by Defendants. As indicated above, Plaintiffs' claims, between their two respective insurance practices, cover the entire gamut of claims of the Settlement Class as set forth in the operative pleadings. Plaintiffs have extensively cooperated with their chosen counsel by meeting in person with the Counsel and reviewing, selecting, and providing to Counsel entire boxes of records related to their sales of insurance products for Defendants.

21

Plaintiffs' counsel are skilled and experienced class action litigators and have spent considerable time and resources prosecuting this case. *See* Declarations of J. Barton Goplerud, Lydia Floyd, Thomas Reavely, and Alan Rosca, attached to *Plaintiffs' Motion for Attorneys' Fees, Expenses, and Class Representative Award*. Among its efforts, Plaintiffs' counsel travelled for three in-person meetings with the individual Plaintiffs, one of whom is located in Indiana and the other one in Montana; have collected and reviewed numerous boxes of records from Plaintiffs, have prepared reports based on those records; and have participated to an in-person mediation in Chicago.

Lastly, there is no conflict between Plaintiffs and the members of the Settlement Class, and Plaintiffs' claims are in line with the claims of the Class.

### C.     The Settlement Class Satisfies the Predominance and Superiority Requirements of Fed. R. Civ. P. 23(b)(3).

Under Fed. R. Civ. P. 23(b)(3), class certification is appropriate if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Common questions of law and fact predominate in this case. As discussed above, Plaintiffs have alleged that Defendants (1) failed to pay certain commissions on premiums paid by policyholders to whom they sold certain products, due to premium increases on those products; (2) failed to properly pay commissions in accordance with the applicable agreements; and (3) improperly replaced agents of record on certain products. Defendants' alleged conduct was directed toward Plaintiffs and the Settlement Class members equally, and thus common questions of law and fact predominate over any individual issues. Such common questions include, for example, whether Defendants' alleged conduct was wrongful, whether Defendants' alleged

22

conduct gives rise to certain legal claims for damages, whether Defendants' alleged conduct caused the alleged damages, and, the amount of damages. While the amount of each Settlement Class member's damages varies, the damages are calculable on a class-wide basis by allocating the net settlement proceeds among the three groups of claims and then to the Settlement Class members based on the number of policies at issue within each group.

Similarly, a class action is superior to other methods of resolution for the Settlement Class members. Each Settlement Class member has the opportunity to participate in a settlement that yields an immediate and substantial benefit. On the other hand, if this matter were not resolved on a class-wide basis, hundreds of individual plaintiffs would be forced to bring a multiplicity of individual and duplicative proceedings in this Court. These individual cases would burden the Court's resources and may result in inconsistent outcomes. And, many cases would not be economically viable on an individual basis—Plaintiffs believe many of the Settlement Class members' damages are several thousand dollars or less—potentially leaving those persons' contractual rights unadjudicated. *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) ("Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually."). Accordingly, Plaintiffs respectfully request that the Court finally certify the Settlement Class for settlement purposes.

## V.  **CONCLUSION**

Based upon the foregoing reasons, Plaintiffs respectfully request that the Court approve the Settlement and certify the class.


Dated: August 27, 2018                                        Respectfully submitted,

                                                    _____/s/ James P. Booker_____

23

**PEIFFER WOLF CARR & KANE**
**A PROFESSIONAL LAW CORPORATION**
James Booker
Lydia Floyd
1422 Euclid Avenue, Suite 1610
Cleveland, Ohio 44115
Telephone: (216) 589-9280
Facsimile: (216) 916-9220
E-Mail: jbooker@pwcklegal.com
            lfloyd@pwcklegal.com

**SHINDLER, ANDERSON, GOPLERUD, &**
**WEESE, P.C.**
J. Barton Goplerud
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone: (515) 223-4567
Fax: (515) 223-8887
Email: goplerud@sagwlaw.com

**ROSCALAW LLC**
Alan Rosca
23250 Chagrin Blvd, Suite 100
Beachwood, Ohio 44122
Telephone: (216) 570-0097
Email: arosca@roscalaw.com

**WHITFIELD & EDDY, P.L.C.**
Thomas S. Reavely
699 Walnut St., Suite 2000
Des Moines, IA 50309-4195
Telephone: (515) 288-6041
Fax: (515) 246-1474
Email: reavely@whitfieldlaw.com

*Attorneys for the Plaintiffs and*
*the Proposed Class*

24