IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **JOHN FASTRICH, UNIVERSAL INVESTMENT SERVICES, INC., and REGINALD J. GOOD,**<br><br>    **Plaintiffs,**<br><br>    vs.<br><br>**CONTINENTAL GENERAL INSURANCE COMPANY, GREAT AMERICAN FINANCIAL RESOURCE, INC., AMERICAN FINANCIAL GROUP, INC., LOYAL AMERICAN LIFE INSURANCE COMPANY, and AMERICAN RETIREMENT LIFE INSURANCE COMPANY,**<br><br>    **Defendants.** | **CASE NO. 1:17-cv-00615-SJD**<br><br>**JUDGE MICHAEL R. BARRETT** |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVE AWARD**

In conjunction with their Motion for Final Approval of the Class Action Settlement, Class Counsel respectfully request that the Court award a total of $450,000.00 for attorney fees, expenses, class administration expenses, and class representative service awards as provided for in the Supplemental Settlement Agreement ¶13, D.E. 37-2. Specifically, Class Counsel requests the following allocation: $353,983.19 in attorney fees, reimbursement of $42,457.71 in expenses, $38,559.10 in claims administration expenses, and total service awards of $15,000.00 for John Fastrich and Reginald J. Good.

### I. INTRODUCTION

This is a class action lawsuit against Defendants Continental General Insurance Company ("CGI"), Great American Financial Resource, Inc. ("GAFRI"), American Financial Group, Inc., Loyal American Life Insurance Company ("LALIC"), and American Retirement Life Insurance Company

1

("ARLIC") (collectively, "Defendants"). This case was brought by John Fastrich and his insurance agency, Investment Services, Inc., and Reginald J. Good (collectively, "Plaintiffs"), on behalf of themselves and on behalf of "[a]ll current and former regional managers, general agents, associate general agents, and agents of CGI . . . who have lost commissions, renewals, and/or overrides as a result of Defendants' wrongful conduct . . . ."

## II. PROCEDURAL HISTORY

On October 26, 2016, Plaintiffs Fastrich and Universal Investment Services filed a Complaint in the United States District Court for the District of Nebraska. The initial complaint alleged that Plaintiffs contracted with CGI to sell CGI's insurance products such as Medicare supplements, long-term care, senior life policies, and annuities to various customers. In exchange, Plaintiffs were to be compensated in the form of commissions, renewals, and overrides (together, "Commissions") on insurance products they sold. The payment structure of the Commissions centered on a contracting hierarchy. Regional managers were at the top of the payment hierarchy, then general managers, general agents, associate general agents, and agents. Once an agent sells an insurance product, that agent becomes the agent of record and is entitled to commissions and/or renewals resulting from the sale. Overrides are the difference between the compensation paid to individuals in the hierarchy. Regional managers and general agents are entitled to such overrides from the agents in their hierarchy.

Plaintiffs claim that they and other Class Members were harmed when Defendants obtained state "approval for various new products" and thereafter "began contacting existing policyholders and replacing the in-force policies with the new products." Complaint, ¶ 29. Plaintiffs initially alleged that Defendants "instructed policyholders to switch policies when receiving rate increase letters" and that when existing policies were replaced with new policies, the existing producers of record were terminated and replaced with new producers of record, some of whom were in-house

producers. *Id*. Plaintiffs claim that they and other similarly situated former-producers lost initial, renewal, and override commissions on policies that were replaced. *Id*. ¶ 32. Plaintiffs also allege that the policy replacements caused many producers to become "non-vested" pursuant to their agreements with Defendants. Id. ¶ 34. Plaintiffs next allege that contracts with Defendants entitled them to receive commissions on premium increases for long-term care insurance policies issued prior to January 2000. Id. ¶ 39. Lastly, Plaintiffs allege that Defendants breached their contracts with Plaintiffs and other Class Members when they did not remit non-vested commissions up the hierarchy to the next agent, allegedly retaining commissions from non-vested agents, and did not pay commissions on premium increases. Id. ¶¶ 41-42. Defendants expressly deny Plaintiffs' allegations.

On August, 21, 2017, Judge Laurie Smith Camp from the United States District Court for the District of Nebraska granted in part and denied in party Defendants' Motion to Dismiss (See D.E. 58, U.S. District Court for the District of Nebraska, Case No. 8:16-cv-00487). Judge Smith Camp determined that GAFRI was not subject to personal jurisdiction in Nebraska, and therefore, on September 14, 2017, Plaintiffs filed a lawsuit against GAFRI in this Court. Approximately one month later, the Parties jointly moved to stay discovery in the Nebraska Lawsuit, which was granted. (See D.E. 66 and 67, U.S. District Court for the District of Nebraska, Case No. 8:16-cv-00487).

The Parties engaged in hard-fought litigation for more than two years and eventually reached a settlement. During that period, Class Counsel engaged in informal discovery and motion practice, including drafting Complaints for two separate cases and successfully defeating a motion to dismiss in the Nebraska action; participated in case management and status conferences; and drafted briefs including those related to Defendants' Motions to Dismiss. Class Counsel also

exchanged and reviewed considerable document production for settlement purposes, monitored *in H2C Holdings et al. v. Great American Financial Resources, Inc.* (a related action for indemnity filed by another company and CGI in Delaware State Court), prepared damages calculations, drafted formal discovery, and participated in extensive arm's-length settlement negotiations. Throughout this time period, the parties exchanged various settlement demands, offers, counter-demands, and counter-offers.

On January 26, 2018, the parties participated in a mediation before the Honorable Richard Neville in Chicago, Illinois. Prior to this mediation, Class Counsel travelled to Chicago, Illinois to meet with Judge Neville in preparation for mediation. While the initial mediation session did not result in settlement, the Parties continued to negotiate a class settlement with the help of Judge Neville. Class Counsel had more than ten post-mediation sessions with Judge Neville in order to obtain resolution of this matter. Several months after mediation, the Parties reached a settlement of this class action on a class-wide basis. Because of the number of Defendants and counsel for each defendant, it took more than six months for the Settlement Agreement to be drafted and finalized. The proposed Settlement would not have come about but for Class Counsel's efforts.

As detailed in Plaintiffs' Memorandum in Support of Motion for Final Approval of the Class Action Settlement, the Settlement provides for a non-reversionary $1,250,000.00 settlement fund (the "Settlement Fund"). The Settlement Agreement also provided for a total of $450,000.00 for attorney fees, expenses, class administration expenses, and class representative service awards. (See Supplemental Settlement Agreement ¶13, D.E. 37-2).

Class Counsel respectfully requests a combined attorneys' fees, expenses award, class administration expenses, and a service award of thirty-six percent of the Settlement Fund, which amounts to $450,000.00. (See Supplemental Settlement Agreement ¶13, D.E. 37-2). Specifically,

Class Counsel request $353,983.19 in attorney's fees, $42,457.71 in expenses, $38,559.19 in claims administration expenses, and a total of $15,000.00 in service awards for John Fastrich and Reginald Good ($7,500.00 each). The attorneys' fees and expenses included in this request represents less than forty percent of the Settlement Fund, a percentage well within the range approved by many courts. The fee is also reasonable using the lodestar method: the lodestar amount is approximately $835,000.00 – far in excess of the attorney's fees requested here.

Class Counsel also requests that the Court approve a $7,500.00 service award to Plaintiffs John Fastrich and Reginald Good for the time and effort each spent assisting the prosecution of the action on behalf of the Class. Plaintiffs demonstrated an understanding of both the basis of the claims and the role of a class representative. They conferred with Class Counsel concerning the status of the case, provided information and documents relating to their investments, assisted in drafting of the Complaint and amendments thereto, and conferred on the Settlement. Submitted with this Memorandum is a declaration from Plaintiffs Fastrich and Good detailing their time and effort on this matter. The requested service awards are comparable to other service awards in other class actions.

### III. STATEMENT OF FACTS

As to the facts and circumstances regarding the Settlement and Case, Plaintiffs respectfully direct this Court to the Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Settlement Agreement, which was filed contemporaneously herewith.

Relevant to the subject of this motion, the parties entered into a settlement agreement subject to the Court's approval. The settlement agreement provided that Defendants agreed to pay the total sum of $1,250,000.00 – less $450,000.00 for attorney's fees, expenses, claim administrative expenses, and Plaintiffs' incentive awards – into a settlement fund to be allocated

among the members of the Settlement Class. If the Court grants this Motion, the amount available for payment of claims will be $800,000.00. Submitted with Plaintiffs' Motion for Preliminary Approval was a Proposed Allocation of Net Settlement Proceeds. No class member has objected to the settlement, attorney fees, costs, or expenses sought by class counsel. (See Declaration of Sarah Evans, ¶ 10).

## IV. ARGUMENT

### A. $353,983.19 Award of Attorneys' Fees Is Reasonable.

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). This Circuit has recognized that a district court has wide discretion to award attorneys' fees. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009). "And in common-fund cases, we require 'only that awards of attorney's fees' 'be reasonable under the circumstances.'" *Id*. (quoting *Rawlings v. Prudential–Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir.1993)).

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings*, 9 F.3d at 516. This requires the Court to determine whether the "lodestar method" or the "percentage of the fund method" is more appropriate. *See Id*. "To determine the lodestar figure, the court multiplies the number of hours "reasonably expended" on the litigation by a "reasonable hourly rate." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016). "Under the percentage-of-the-fund method for analyzing a request for attorney fees, the court determines a percentage of the settlement to award class counsel based on case-specific factors." *Palombaro v. Emery Fed. Credit Union*, 2018 WL 5312687, at *8 (S.D. Ohio Oct. 25, 2018) "The lodestar method of calculating fees 'better accounts for the amount of work done,' whereas 'the percentage

of the fund method more accurately reflects the results achieved.'" *Gascho*, 822 F.3d at 279 (quoting *Rawlings*, 9 F.3d at 516).

As this Court explained in *Mullins v. Southern Ohio Pizza, Inc.*, "when conducting a percentage of the fund analysis, 'Attorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class (which includes the 'benefit to class members,' the attorney's fees and may include costs of administration).'" No. 1:17-CV-426, 2019 WL 275711, at *4 (S.D. Ohio Jan. 18, 2019)(quoting *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016)). Within the Sixth Circuit, courts typically approve attorney's fees between 20 to 50 percent of the common fund. *Id.* (citing *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 380-81 (S.D. Ohio 2006); *In re Telectronics Pacing Sys., Inc.*, 137 F.Supp.2d 1029 (S.D. Ohio 2001); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 217 (S.D. Ohio 1997), *rev'd on other grounds*, 24 F. App'x 520 (6th Cir. 2001)).

In this case, the percentage of the fund methodology is the appropriate methodology to use. Class Counsel seeks 28.3% of the Settlement Fund, which is within the Sixth Circuit's reasonable range. *See Id.*; *see also Palombaro*, 2018 WL 5312687 at *8 (stating "[a]n award of one third of a common fund is within the percentage range that courts have awarded in class action settlements in the Sixth Circuit.").

Additionally, Class Counsel devoted substantial time and energy into this matter: 1,627.54 hours. *See* Declarations of J. Barton Goplerud, Thomas Reavely, Lydia Floyd, and Alan Rosca attached hereto. These hours do not include any time spent concerning the issue of second notice to the class. It also does not contain time that will be necessary for appearing for or attending the final approval hearing. Class Counsel's lodestar figure totals $835,034.00. *Id.* Yet Class Counsel only seek $353,983.19in attorney's fees (42.4% of their lodestar figure). *Id.* Below is a table

7

| LAW FIRM | TOTAL HOURS | TOTAL LODESTAR |
|---|---:|---|
| SHINDLER, ANDERSON, GOPLERUD & WEESE, P.C. | 754.00 | $ 362,510.00 |
| PEIFFER WOLF CARR & KANE, A.P.L.C. | 498.84 | $ 321,804.00 |
| WHITFIELD & EDDY | 308.20 | $ 104,170.00 |
| ROSCALAW LLC | 66.50 | $ 46,550.00 |
| TOTAL | 1,627.54 | $ 835,034.00 |

showing the total hours expended on this matter by Class Counsel, their respective lodestar, and the expenses they seek reimbursement for:

Together, this shows that the requested fee is reasonable. It also shows that the percentage of the fund approach is the most appropriate methodology to use because it results in an attorney fee award that is fair for the Class Members as well as compensates Class Counsel for their substantial work in this case. If Class Counsel applied for their lodestar, they would be seeking 66.8% of the settlement fund – far outside the reasonable range. In short, adopting the percentage of the fund methodology is in the best interest of the Class Members.

Furthermore, in determining whether to award fees under the lodestar method or the percentage of the fund method, the Court "must articulate the 'reasons for adopting a particular methodology and the facts considered in arriving at the fee.'" *Id*. (quoting *Moulton*, 581 F.3d at 352). In doing so, the Court should consider the following *Ramey* factors:

1. The value of the benefit rendered to the plaintiff class;
2. The value of the services on an hourly basis;
3. Whether the services were undertaken on a contingent fee basis;
4. Society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;
5. The complexity of the litigation; and
6. The professional skill and standing of counsel involved on both sides.

8

*Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996); *See also Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). The first two factors are the most important. *See In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 930 (N.D. Ohio 2003). Application of these factors is straightforward and supports using the percentage of the fund methodology.

1. Value of the Benefit Rendered to the Plaintiff Class

Plaintiffs and Class Counsel have secured $1,250,000.00 from the Defendants. This is a significant victory considering the factual and legal issues in this case. Whether Defendants are civilly liable for Plaintiffs' losses is an unresolved question of law and fact. And Plaintiffs' damages are very difficult to quantify. A portion of Plaintiffs damages are owed for lost commissions on policies that were in place prior to 2000. Plaintiffs' damage calculation includes some uncertainty because it assumes that the policy holder would not have changed or cancelled their policies. Nonetheless, had it not been for Class Counsel, the Class would never have made any recovery.

2. The Value of the Services on An Hourly Basis

This factor requires the Court to consider Class Counsel's lodestar figure. As discussed above, Class Counsel reasonably expended 1,627.54 hours on this matter. *See* Declarations of Goplerud, Reavely, Floyd, and Rosca. Based upon the hourly rates of each attorney working on this matter, their lodestar is $835,034.00. *Id*. Yet, Class Counsel only seeks $353,983.19 in attorney's fees. Should the Court approve this Application, Plaintiff Class is receiving significant value for Class Counsel's services.

3. Whether the Services Were Undertaken on a Contingent Fee Basis

This case was taken on a contingent fee basis, and its outcome was far from certain. In fact,

9

this Court dismissed Plaintiffs' Nebraska Complaint against Defendant GAFRI. For over three years, Class Counsel worked on this case with no promise of recovery or payment. Plaintiffs' counsel carried all costs and faced significant financial risk in prosecuting this action on a class-wide basis. This also supports a finding of reasonableness for the Requested Fee.

   4. <u>Society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others</u>

"[T]he Court must ensure that Class Counsel is fairly compensated in order to facilitate the goal of class actions—i.e., to provide a vehicle for collective action to pursue redress for tortious conduct that it is not feasible for an individual litigant to pursue." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 795 (N.D. Ohio 2010). Awarding Class Counsel's requested fee will incentivize other attorneys to take difficult cases such as this one. And given the large amount of persons injured by Defendants' alleged conduct, the class action vehicle was an effective vehicle to redress Defendants' alleged misconduct.

   5. <u>The complexity of the litigation</u>

This case was extremely complex. As indicated above, it required significant legal drafting. It also required Class Counsel investigate and determine who the current and subsequent entities that should be sued. While CGI still exists, portions of its assets and insurance products have been sold. As such, it took considerable amount of time and research to determine which entities may be responsible for Plaintiffs' damages. This case also required counsel to review of thousands of pages of documents.

Furthermore, preparing a damage model and analyzing class damages was also complex. It required analyzing agent contracts, commission statements, and other class members' documents that spanned decades. Lastly, the Parties engaged in complex negotiations and mediation. As discussed above, this required mediation, followed by many post-mediation sessions with Judge

Neville.

      6. <u>The professional skill and standing of counsel involved on both sides</u>

The reasonableness of the fee can also measured against the quality of class counsels' effort. As recognized by many courts, "one of the primary determinants of the quality of work performed is the result obtained." *Rawlings*, 9 F.3d 517; *see also In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) ("The quality of the representation is demonstrated by the substantial benefit achieved for the Class and the efficient, effective prosecution and resolution of this action").

 The Court is well-positioned to judge the quality of Class Counsel's work, but the benefits obtained for the class are a clear and simple indicator of Class Counsel's expertise. The result obtained in this case is undeniably favorable to the Class Members as they will recover a portion of their Commissions – which is very difficult considering they victims of Defendants' actions over twenty plus years.

Moreover, this action was vigorously contested by highly regarded lawyers with significant experience in defending class actions. The quality of opposing counsel and the determination of the opposition are also important factors in assessing the quality of the services rendered by Class Counsel. *See, e.g., Morales v. Farmland Foods, Inc.,* No. 8:08CV504, 2013 WL 1704722, at *6 (D. Neb. Apr. 18, 2013) ("a reasonable attorney fee award must take into account whether the defendant mounted an aggressive defense"). Class counsel's ability to obtain a favorable result for the Class Members despite zealous opposition further demonstrates the quality of the legal services they provided.

      **a.    Class Members' Reaction to the Settlement Supports the Reasonableness of Class Counsel's Fee Request.**

The Notice of Settlement stated the amount of fee and expenses for which Class Counsel

could seek reimbursement. No class member objected to the fees and expenses sought by Class Counsel. (See Declaration of Sarah Evans, ¶ 10). In fact, no class member objected to the settlement at all. (*Id.*). This lack of objections further supports a finding that the requested fee is reasonable. *See, e.g., 9–M Corp. v. Sprint Commc'ns Co. L.P.,* No. 11–3401, 2012 WL 5495905, at *3 (D. Minn. Nov. 12, 2012) ("The absence of objections or disapproval by class members to Settlement Class Counsel's fee-and-expense request further supports finding it reasonable."), *Ressler v. Jacobson,* 149 F.R.D. 651, 656 (M.D. Fla. 1992) (the lack of objections is "strong evidence of the propriety and acceptability" of fee request).

**B.  Expense Reimbursement of $42,457.71 for Reasonable and Necessary Expenditures to Obtain Class-wide Relief Is Appropriate.**

As detailed in Goplerud, Reavely, Floyd, and Rosca's respective Declarations, Class Counsel has incurred expenses totaling $42,457.71. Each firm incurred the following expenses:

| LAW FIRM | TOTAL EXPENSES |
|---|---|
| SHINDLER, ANDERSON, GOPLERUD & WEESE, P.C. | $ 17,109.99 |
| PEIFFER WOLF CARR & KANE, A.P.L.C. | $ 19,631.91 |
| WHITFIELD & EDDY | $ 5,634.10 |
| ROSCALAW LLC | $ 81.71 |
| **TOTAL** | **$ 42,457.71** |

These expenses were reasonable and necessary. Accordingly, Class Counsel seek an award for expenses in this amount.

All of these expenses were incurred for routine litigation matters such as filing fees, photocopying documents, travel expenses and mediator costs. All of these costs were reasonable and necessary to obtain the substantial settlement reached and were expended for the benefit of the class. Class Counsel has not been compensated for any expenses since this litigation began. No class member has objected to the requested reimbursement of expenses, and the requested reimbursement will not reduce the funds available to class members.

12

Courts routinely approve the expenses incurred in litigating complex class actions. *See In re China Sunergy Sec. Litig.*, No. 07-7895, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation"); *See also In re Zurn Pex Plumbing Prod. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2013 WL 716460, at *5 (D. Minn. Feb. 27, 2013) (finding that "such expenses are related and necessary to the production of this type of litigation and are properly recovered by counsel who prosecute cases on a contingent basis" and "costs . . . will not reduce the benefits available to class members"). Accordingly, Class Counsel requests that this Court award expenses of $42,457.71.

**C.    Service Awards of $7,500.00 for John Fastrich and Reginald Good Are Fair and Reasonable.**

As many courts have recognized, "[i]t is very common in class action cases for service or incentive payments to be paid to named Plaintiffs or class representatives in addition to their proportionate share of the recovery." *Faile v. Lancaster County*, 2012 U.S. Dist. LEXIS 189610, *41 (D.S.C. 2012); *Huguley v. General Motors Corp.*, 128 F.R.D. 81, 85 (E.D. Mich. 1989) ("Named plaintiffs and witnesses are entitled to more consideration than class members generally because of the onerous burdens of litigation that they have borne."). "Such awards are not uncommon, and 'courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *7 (N.D. Ohio, Mar. 8, 2010) (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000)). These payments also "compensate Plaintiffs for their additional efforts . . . and hardships they have undertaken as class representatives on behalf of the group in filing and prosecuting the action."

13

*Faile*, 2012 U.S. Dist. LEXIS 189610 at *41.

"The Sixth Circuit has held that incentive awards to class representatives may be appropriate in some cases, but has not defined the circumstances justifying incentive awards." *Lonardo*, 706 F. Supp. 2d at 787 (citing *Hadix v. Johnson*, 322 F.3d 895, 898 (6th Cir.2003)). Nonetheless, "Courts within the Sixth Circuit. . . recognize that, in common fund cases and where the settlement agreement provides for incentive awards, class representatives who have had extensive involvement in a class action litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone." *Id*.

Here, Plaintiffs devoted considerable time and effort in pursuing this action. This includes assisting in the investigation and consultation with counsel, reviewing Class Counsels' submissions, and regular communication with Class Counsel. Also, Plaintiffs' declarations submitted herewith detail Plaintiffs assistance in this matter. *See* Declaration of John Fastrich and Reginald Good attached hereto.

These Plaintiffs' assistance was essential to this case. Without their willingness to step forward, no class action would exist and class members would be receiving nothing. By agreeing to serve as representatives of the class, Plaintiffs made it possible for all Class Members to receive compensation. Therefore, this Court should approve Plaintiff's reasonable service award.

## V. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Honorable Court enter an order awarding $450,000.00 for attorneys' fees, litigation expenses, claims administration expenses, and service awards. Specifically, Class Counsel requests the following allocation: $353,983.19 in attorney fees, reimbursement of $42,457.71 in expenses, $38,559.10 in claims administration expenses, and total service awards of $15,000.00 for John Fastrich and Reginald J.

Good.

Dated: August 27, 2019　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　*/s/ James P. Booker*
　　　　　　　　　　　　　　　　　　**PEIFFER WOLF CARR & KANE**
　　　　　　　　　　　　　　　　　　**A PROFESSIONAL LAW CORPORATION**
　　　　　　　　　　　　　　　　　　James Booker
　　　　　　　　　　　　　　　　　　Lydia Floyd
　　　　　　　　　　　　　　　　　　1422 Euclid Avenue, Suite 1610
　　　　　　　　　　　　　　　　　　Cleveland, Ohio 44115
　　　　　　　　　　　　　　　　　　Telephone:  (216) 589-9280
　　　　　　　　　　　　　　　　　　Facsimile:  (216) 916-9220
　　　　　　　　　　　　　　　　　　E-Mail: jbooker@pwcklegal.com
　　　　　　　　　　　　　　　　　　　　　　lfloyd@pwcklegal.com

　　　　　　　　　　　　　　　　　　**SHINDLER, ANDERSON, GOPLERUD & WEESE, P.C.**
　　　　　　　　　　　　　　　　　　J. Barton Goplerud
　　　　　　　　　　　　　　　　　　5015 Grand Ridge Drive, Suite 100
　　　　　　　　　　　　　　　　　　West Des Moines, Iowa 50265
　　　　　　　　　　　　　　　　　　Telephone:  (515) 223-4567
　　　　　　　　　　　　　　　　　　Fax:  (515) 223-8887
　　　　　　　　　　　　　　　　　　Email: goplerud@sagwlaw.com

　　　　　　　　　　　　　　　　　　**ROSCALAW LLC**
　　　　　　　　　　　　　　　　　　Alan Rosca
　　　　　　　　　　　　　　　　　　23250 Chagrin Blvd, Suite 100
　　　　　　　　　　　　　　　　　　Beachwood, Ohio 44122
　　　　　　　　　　　　　　　　　　Telephone: (216) 570-0097
　　　　　　　　　　　　　　　　　　Email: arosca@roscalaw.com

　　　　　　　　　　　　　　　　　　**WHITFIELD & EDDY, P.L.C.**
　　　　　　　　　　　　　　　　　　Thomas S. Reavely
　　　　　　　　　　　　　　　　　　699 Walnut St., Suite 2000
　　　　　　　　　　　　　　　　　　Des Moines, IA  50309-4195
　　　　　　　　　　　　　　　　　　Telephone:  (515) 288-6041
　　　　　　　　　　　　　　　　　　Fax:  (515) 246-1474
　　　　　　　　　　　　　　　　　　Email: reavely@whitfieldlaw.com

　　　　　　　　　　　　　　　　　　*Attorneys for the Plaintiffs and the Proposed Class*